

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2001

# Comuso v. Natl RR Passenger

Precedential or Non-Precedential:

Docket 00-1491

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

### Recommended Citation

"Comuso v. Natl RR Passenger" (2001). *2001 Decisions.* Paper 227.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/227

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 3, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1491

MARIO G. COMUSO;
MARVIN I. BARISH, ESQUIRE

Marvin I. Barish, Esquire,
        Appellant

v.

NATIONAL RAILROAD PASSENGER CORPORATION

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 97-cv-07891)
District Judge: Hon. Herbert J. Hutton

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2001

Before: SLOVITER, ALITO and FUENTES, Circuit  Judges

(Filed October 3, 2001)

        James E. Beasley
        David A. Yanoff
        Beasley, Casey & Erbstein
        Philadelphia, PA 19107-4997

         Attorneys for Appellant

        Gerald T. Ford
        Christopher S. Kozak
        Landman Corsi Ballaine & Ford
        Newark, New Jersey 07102

         Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Marvin I. Barish, counsel for the plaintiff Mario Comuso, seeks immediate appellate review of the District Court's order dated April 25, 2000 imposing sanctions against him. We must determine whether we have jurisdiction to hear this appeal under 28 U.S.C. S 1291, and, if not, whether we should issue a writ of mandamus as requested.

I.

FACTS AND PROCEDURAL BACKGROUND

Comuso filed an action against the National Railroad Passenger Corp. ("Amtrak") under the Federal Employer's Liability Act, 45 U.S.C. S 51 et seq., alleging that he suffered personal injuries while working for Amtrak. The trial commenced on January 11, 1999 before Judge Herbert J. Hutton in the United States District Court for the Eastern District of Pennsylvania. Comuso was represented by Barish, and Amtrak was represented by Paul F.X. Gallagher.

According to Barish, the trial began poorly for Gallagher, as testimony from the plaintiff 's witnesses showed that certain representations that Gallagher had made during his opening statement were false. Gallagher responded by cross-examining the plaintiff with a line of questioning that Barish believed was improper and which angered him. After the cross-examination, the court called a recess.

It is the events that took place during that recess on January 12, 1999 that ultimately led to the sanctions against Barish. These facts are not really disputed by the parties. Outside the presence of the District Judge or the jury, but apparently in the presence of several witnesses, Barish approached Gallagher with his fists cocked and threatened to kill him. Barish was screaming when he threatened Gallagher. Barish called Gallagher a"fat pig", a

"mother f-----," and "lower than whale s----." App. at 456-459. These threats culminated with Barish's assistant, Randy Zevin, having to physically pull Barish away from Gallagher. According to Barish's own testimony at the hearing he stated that he said "if you come around me, I'm going to kill you," J.A. at 454, which in his brief before this court he explains as meant to be "a warning to Mr. Gallagher (albeit in an admittedly heated and hyperbolic fashion) to stay away from him in the future." Br. of Appellant at 15 n.10.

After the recess, the court summoned a United States Marshal and declared a mistrial. The court stated,"The constant bickering and lack of gentlemanly conduct in the courtroom in front of the jury was of such a nature that I've never seen it before." App. at 257-258. Barish objected, but the court noted that Barish threatened Gallagher's life in the presence of witnesses. Barish denied that he threatened Gallagher's life. The court, however, declared that the matter was over and asked both counsel to leave the courtroom.

Amtrak, after obtaining new counsel, moved for sanctions against Barish. The District Court held a hearing on March 2, 2000 at which both Barish and Gallagher testified. Barish stated that his conduct "was not appropriate. I shouldn't have done it. I should have been able to control myself. . . . it's never going to happen again, I can tell you that." App. at 449. In addition, he admitted that"I think most of the things he said that I said, I did." App. at 454. However, Barish said that he would not have really killed or attacked Gallagher, as they were friends. Gallagher testified that Barish did threaten to kill him and that even though "as big as I am, I shouldn't have been that fearful of being stricken, . . . I felt I was going to take a hit." App. at 489.

In an April 26, 2001 order, the District Court found, inter alia, that:

> (1) Barish's outrageous profane behavior during the Court's recess on January 12, 1999 was in bad faith.

> (2) Barish's conduct resulted in the needless waste of judicial resources.

(3) Barish imposed upon his client and his adversary emotional and financial costs.

(4) Barish needlessly squandered the time and service of the empaneled jury.

(5) Barish inexcusably delayed for both parties a determination of their rights and status under the law.

(6) Barish's prevarication impugned the integrity and dignity of the proceedings and required the intervention of the U.S. Marshal's Service to escort him from the courtroom.

Comuso v. Nat'l R.R. Passenger Corp., No. 97-7891, slip op. at 5 (E.D. Pa. filed Apr. 25, 2000).

The court considered its authority to impose sanctions under 28 U.S.C. S 1927, but held that S 1927 only applied to abuses of the judicial process, i.e., conduct while in court. However, the court noted that it had inherent powers to discipline attorneys practicing before it, citing to our decision in Matter of Abrams, 521 F.2d 1094, 1099 (3d Cir. 1975). After noting that Barish had engaged in a pattern of misconduct before other trial courts,[1] the District Court ordered Barish to pay Amtrak reasonable fees and costs in litigating the Comuso matter. The court also disqualified Barish from the continued representation of Comuso. Finally, the court referred the opinion and record to the Disciplinary Board of the Supreme Court of Pennsylvania for review and consideration.

_____

1. The court cited, inter alia, Spruill v. National RR Passenger Corp., 1995 WL 534273 (E.D.Pa. Sept. 5, 1995) (vacating plaintiff 's verdict and stating that Barish's conduct was "intemperate, inappropriate, and disrespectful" and "shocked the conscience of the court"); McEnrue v. New Jersey Transit Rail Operations, Inc., No. 90-4728 (D.N.J. Sept. 30, 1993) (vacating multi-million dollar verdict because of Barish's conduct); Patchell v. National Railroad Passenger Corp., 1992 WL 799399 (E.D.Pa. July 31, 1992) (ordering new trial because of Barish's outrageous trial conduct); Bezerra v. National Railroad Passenger Corp., No. 97-1511 (Phila. County Ct. Common Pleas June 7, 1999) (referring to obscene and intemperate language by Barish); Muni v. National Railroad Passenger Corp., No. 97-1489, (Phila. County Ct. Common Pleas Jan. 21, 1999) (trial court admonished Barish for making improper remarks).

4

After Barish filed a timely appeal to this court, Amtrak filed a motion to dismiss the appeal on the basis of lack of jurisdiction. Subsequently, the District Court determined that Barish should pay $13,285.61 in reasonable fees and costs to Amtrak. Comuso v. Nat'l R.R. Passenger Corp., No. 97-7891, slip op. at 10 (E.D. Pa. filed Nov. 22, 2000). The court also placed the underlying case on its civil suspense file pending resolution of Barish's appeal. App. at 510.

II.

DISCUSSION

Barish argues that the motion for sanctions was untimely as a matter of law and filed for a plainly improper purpose; sanctions could not be imposed under the court's inherent authority as a matter of law even assuming there was a legal basis for the court to use its inherent power; it committed reversible error by failing to conduct the analyses as required by the controlling law; the findings of law and fact that the District Court made are legally erroneous and are clearly insufficient to warrant the sanctions imposed; the District Court violated rules of law and ethics in its referral to the Disciplinary Board; and the District Court imposed sanctions in violation of Barish's due process rights. Amtrak responds that this court lacks jurisdiction over the appeal, the sanctions motion was not filed for an improper purpose, the sanctions motion was timely, the District Court did not abuse its discretion in ordering the sanctions, the manner of the District Court's referral to the Disciplinary Board was not improper, and Barish was afforded due process.

In the view that we take of this case, we will not consider any of the contentions as to the merits of the sanctions order because we focus on our jurisdiction to hear this appeal. Under 28 U.S.C. S 1291, "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." This rule requires parties to "raise all claims of error in a single appeal following final judgment on the merits." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981).

5

The Supreme Court has recognized that a narrow class of prejudgment orders may be immediately appealable. Such "collateral orders" must (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the action"; and (3) "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978). These requirements must be stringently applied in order to prevent the exception from swallowing the general rule. See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994).

In the case at hand, the District Court has not yet entered a final judgment on the merits.[2]  Therefore, we must consider whether the District Court's sanctions order meets the three prongs of the collateral order doctrine. Amtrak concedes that the order is conclusive as to Barish's disqualification from the case and the referral of Barish's behavior to the Disciplinary Board.

Furthermore, the court has since quantified the amount of costs and fees, and determined that Barish should pay $13,285.61 to Amtrak. Thus, the order satisfies the first prong of the collateral order doctrine. See Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000) ("An award of sanctions is not a final order, and thus not appealable, until the district court determines the amount of the sanction").

We turn next to consider whether the District Court's order meets the second and third prongs of the collateral order doctrine, importance/separateness and unreviewability. The second prong has been described as a two-part inquiry. See, e.g., Martin v. Brown, 63 F.3d 1252, 1261 (3d Cir. 1995). We must ask whether "review now is less likely to force the appellate court to consider approximately the same (or a very similar) matter more

_____

2. It appears that Barish's appeal of the sanctions order, which includes Barish's disqualification to represent Comuso, is one of the factors that has held up resumption of the trial proceedings. We note that the court's order did not disqualify other lawyers in Barish's firm, and Amtrak's brief states that another lawyer has entered an appearance for Comuso in the District Court.

6

than once, and also seems less likely to delay trial court proceedings (for, if the matter is truly collateral, those proceedings might continue while the appeal is pending)." Johnson v. Jones, 515 U.S. 304, 311 (1995). We must also consider "the value of interests that would be lost through rigorous application of a final judgment requirement." Digital Equip., 511 U.S. at 878-79.3  Regarding the third prong, the "order must be such that review postponed will be review denied." Martin, 63 F.3d at 1261 (quotation omitted).

The appealability of a district court's order disqualifying the plaintiff 's attorneys from a civil case was at issue in Richardson-Merrell, Inc. v. Koller, 472 U.S. 424 (1985). In that case, the trial court disqualified counsel and their law firm and revoked their pro hac vice admissions for releasing certain information to the media and improper contacts with a witness. The Court of Appeals reversed after holding that it had jurisdiction to entertain the appeal pursuant to 28 U.S.C. S 1291. The Supreme Court granted certiorari and reversed.

The Court noted that it had previously held that an order denying a motion to disqualify counsel in a civil case was not subject to immediate appeal but it had left open the issue of the appealability of an order granting disqualification. Id. at 431-32 (citing Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 372 (1982)). The Court then noted that thereafter it held that "a district court's pretrial order granting disqualification of defense counsel in a criminal case was not immediately appealable." Id. at 432 (citing Flanagan v. United States, 465 U.S. 259 (1984)). The Court then decided that the same was true for a disqualification order in a civil case. Regarding the second of the prong, the Court stated that a disqualification order, "though `final,' is not independent of the issues to be tried." Id. at 439. The Court noted that "[o]nly after assessing the effect of the ruling on the final judgment could an appellate court decide whether the client's rights had been

_____

3. The "importance" requirement has been alternatively considered in connection with the third prong of the collateral order doctrine. See Digital Equip., 511 U.S. at 878.

7

prejudiced. If respondent were to proceed to trial and there receive as effective or better assistance from substitute counsel than the disqualified attorney could provide, any subsequent appeal of the disqualification ruling would fail." Id. at 439.

Significantly, the Court rejected a case-by-case approach to determining whether a particular ruling would be immediately appealable. It recognized that "[e]ven if some orders disqualifying counsel are separable from the merits of the litigation, many are not." Id. at 439. Therefore, it concluded that "orders disqualifying counsel in civil cases, as a class, are not sufficiently separable from the merits to qualify for interlocutory appeal." Id. at 440 (emphasis added).

The Court further held that a "disqualification order can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal." Id. at 438. In so holding, the Court expressly rejected the argument that "the disqualified attorney's personal desire for vindication [is] . . . an independent ground from interlocutory appeal." Id. at 434–35. The Court recognized that a disqualified attorney "may well have a personal interest in pursuing an immediate appeal, an interest which need not coincide with the interests of the client." Id. at 435."As a matter of professional ethics, however, the decision to appeal should turn entirely on the client's interest." Id.  (citing Model Rules of Prof 'l Conduct R. 1.7(b), 2.1 (1985)).

Amtrak argues that Richardson–Merrell is dispositive here. Barish seeks to distinguish Richardson–Merrell  on the ground that Richardson–Merrell considered only the disqualification of an attorney and did not consider the appealability of other sanctions, such as the imposition of reasonable fees and costs. He contends that his case is more analogous to two decisions from this court which upheld jurisdiction even after Richardson–Merrell.

In Eavenson, Auchmuty & Greenwald v. Holtzman , 775 F.2d 535 (3d Cir. 1985), we considered the appealability of a sanctions order imposed under Fed. R. Civ. P. 11 against the plaintiff 's attorney for the amount of $1,642.50 in reasonable fees and costs. The attorney immediately

8

withdrew from the case and the plaintiff obtained new counsel and proceeded with the litigation. The sanctioned attorney appealed the Rule 11 sanctions order. We first recognized that the first two prongs of the collateral order doctrine were satisfied because the order "finally and conclusively determines the sanctions issue, and the resolution thereof is completely separate from the merits of the case." Eavenson, 775 F.2d. at 538.

We also then concluded that the order was effectively unreviewable on appeal from final judgment, reasoning that because the sanctioned attorney was "no longer connected with the merits of the case, he has an immediate interest in challenging the sanction which is not shared by the parties to the suit or by counsel to a party." Id. at 538-39. Moreover, "the possibility exists that appellant's former client may ultimately prevail on the merits, or settle the case; in either of those situations, it is not clear that appellant would be able to appeal from final judgment." Id. at 539. In addition, "it is quite possible, even likely, that appellant, as a non-party, may be unaware that the suit has been terminated so as to be able to file a timely appeal. Thus, appellant might never be able to receive any appellate review of the sanctions order if he is denied that opportunity now." Id. We therefore concluded that the sanctions order was an immediately appealable collateral order.

The second case relied on by Barish, In re Tutu Wells Contamination Litig., 120 F.3d 368 (3d Cir. 1997), involved what we described as "heavy sanctions" against a law firm and a corporate client for discovery abuses: a fine of $250,000 and $750,000 respectively and the suspension of two attorneys from practicing law in the district court for three years and a third attorney for a year. Id. at 371-72. Citing to Eavenson, we ruled that the sanctions order was immediately appealable by the attorneys. In re Tutu Wells, 120 F.3d at 378. Regarding the separateness prong, we recognized that "our review of the order suspending [the attorneys] would not force us to examine the merits of the case at all." Id. We then noted that the suspended attorneys were no longer in the underlying litigation and therefore could not effectively appeal the sanctions. Lastly, we stated

that the suspension from legal practice "impose[s] significant burdens on the reputation and career opportunities of the sanctioned attorney." Id. at 379 (quotation omitted). Therefore, we held that we had jurisdiction over the appeal of that order.

Barish seeks to analogize his appeal to those in Eavenson and In re Tutu Wells because he is no longer part of the litigation and will have difficulty in appealing the decision. Barish's analogy fails for several reasons. First, neither of those cases involved a disqualification of an attorney from the case. The sanction in Eavenson was merely an award of attorney's fees and costs, and the attorney withdrew after the imposition of the sanctions. In re Tutu Wells involved a suspension from practicing law, which is a far more severe penalty than mere disqualification from a case. The principal concern when an attorney is disqualified from a case is with the party's ability to choose his/her lawyer and to proceed with the litigation, whereas the suspension of an attorney from practicing law implicates the attorney's ability to pursue other career opportunities.

Barish argues that the District Court's order has imposed burdens on his reputation and career opportunities, and notes that a district court in New Jersey recently rejected Barish's pro hac vice application, based in part on the sanctions order in Comuso.4 Even if the force of our reasoning in In re Tutu Wells remained unqualified, it would not require our acceptance of jurisdiction here as the disqualification of Barish from one case and the denial of his pro hac vice application is not of the same magnitude as a suspension of the practice of law for several years.

Of more direct significance is the Supreme Court's decision in Cunningham v. Hamilton County, Ohio , 527 U.S. 198 (1999), which was issued after our decisions in Eavenson and In re Tutu Wells. In Cunningham, after holding that the plaintiff 's attorney engaged in a pattern of

_____

4. We note that a panel of this court recently dismissed for lack of appellate jurisdiction Barish's appeal from that order denying his pro hac vice application. See Kohlmayer v. National Railroad Passenger Corp., Nos. 01-1202 & 01-1508, Order Dismissing Appeal for Lack of Jurisdiction, July 16, 2001.

10

discovery abuses, the district court disqualified that attorney from the case and ordered her to pay $1,494 in reasonable fees and costs pursuant to Fed. R. Civ. P. 37(a). The attorney then appealed. The court of appeals dismissed the appeal for lack of jurisdiction and the Supreme Court affirmed.

The Court stated that "[w]e do not think . . . that appellate review of a sanctions order can remain completely separate from the merits." Cunningham, 527 U.S. at 205. In particular, "[a]n evaluation of the appropriateness of sanctions may require the reviewing court to inquire into the importance of the information sought [in discovery] or the adequacy or truthfulness of a response." Id. The Court further determined that the sanctions order could be effectively reviewed on appeal from a final judgment. The Court noted, as it did in Richardson-Merrell, that an attorney might have a personal interest in pursuing an immediate appeal of sanctions but that " `the decision to appeal should turn entirely on the client's interest.' " Id. at 207 (quoting Richardson-Merrell, 472 U.S. at 435).

The Court added: "[W]e do not think that the appealability of a Rule 37 sanction imposed on an attorney should turn on the attorney's continued participation [in the litigation]. Such a rule could not be easily administered . . . [and] could be subject to abuse if attorneys and clients strategically terminated their representation in order to trigger a right to appeal with a view to delaying the proceedings in the underlying case." Id. at 209. The Court expressly recognized that while "our application of the final judgment rule in this setting may require nonparticipating attorneys to monitor the progress of the litigation after their work has ended, the efficiency interests served by limiting immediate appeals far outweigh any nominal monitoring costs borne by attorneys." Id. Lastly, the Court noted that while declining jurisdiction would impose some hardships on an attorney, it was for Congress and not the courts to amend 28 U.S.C. S 1291 to allow for immediate appeal of certain orders. Id. at 210.

Although the Cunningham decision did not refer to Eavenson and In re Tutu Wells, it chose not to follow the rationale of those cases. The fact that a trial court's order

11

disqualifies an attorney from a case (meaning that the attorney is no longer part of the litigation) does not make that order immediately appealable. Rather, that attorney must monitor the litigation and wait to appeal the sanctions order after there has been a final judgment on the merits. Therefore, our decisions in Eavenson and In re Tutu Wells are no longer good law to the extent that they conflict with Cunningham.

Barish attempts to distinguish Cunningham by noting that the Court's decision in that case specifically considered a sanctions order imposed under Fed. R. Civ. P. 37 for discovery abuses whereas in this case the District Court imposed sanctions under its inherent powers for conduct that occurred outside the court. The distinction is not dispositive. First, Barish's brief on the merits of his appeal seeks to defend or at least explain his actions by reviewing the trial tactics and strategy employed by both Gallagher and himself. See Br. of Appellant at 10–16. Any consideration of the sanctions imposed against him would necessitate consideration of the merits of the litigation. But more important is that the Supreme Court has consistently rejected a case-by-case approach in deciding whether an order was separate from the merits of the litigation in favor of a per se rule that sanctions orders are inextricably intertwined with the merits of the case. See Cunningham, 527 U.S. at 206; Richardson–Merrell, 472 U.S. at 439. Therefore, we hold that the District Court's order imposing sanctions against Barish is not sufficiently separate from the underlying merits of the case.

Moreover, we note that denying jurisdiction now does not prevent appellate review of the sanctions in an appeal of the final judgment on the merits. The fact that Barish is no longer part of the litigation does not make the sanctions order immediately appealable. We recognize that Barish has a personal interest at stake that may be different from his client's interests. But, as the Supreme Court noted in Richardson–Merrell and Cunningham, the interests of the client must come first. Comuso obviously has an interest in a speedy resolution of his claims, but Barish's appeal has already delayed the action from proceeding to a new trial. App. at 510. That Barish may have to monitor the progress

12

of the litigation in order to appeal upon final judgment is not dispositive. See Cunningham, 527 U.S. at 209. Therefore, the order imposing sanctions on Marvin Barish is not immediately appealable under 28 U.S.C. S 1291.

Barish alternatively argues that we should issue a writ of mandamus to the District Court. A writ of mandamus should be issued only in extraordinary circumstances, where there has been a clear abuse of discretion or conduct amounting to the usurpation of judicial power. See Mallard v. United States Dist. Court, 490 U.S. 296, 309 (1989). Petitioners for the writ must also show "that they lack adequate alternative means to obtain the relief they seek" and that their right to issuance of the writ is "clear and indisputable." Id. In light of Barish's outrageous conduct, and the Supreme Court's affirmation of a district court's inherent power to discipline attorneys appearing before it, see Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991), we cannot hold that the District Court's sanction in this case exceeded the boundaries of appropriate judicial response warranting issuance of a writ of mandamus.

III.

CONCLUSION

For the foregoing reasons, we will dismiss the appeal for lack of jurisdiction and deny the petition for a writ of mandamus.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13