**GMAC BANK, Plaintiff,**

**v.**

**HTFC CORP., Defendant.**

**Civil Action No. 06-5291.**

United States District Court,
E.D. Pennsylvania.

Aug. 12, 2008.

Robert B. Bodzin, Melissa Canfield Prince, Kleinbard Bell & Brecker LLP, Philadelphia, PA, for Plaintiff.

Joseph R. Ziccardi, Chicago, IL, Daniel Strick, Lucas & Cavalier, LLC, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the Court is defense counsel Joseph Ziccardi's motion for reconsideration of the February 29, 2008 memorandum and order sanctioning him for his conduct at the deposition of Aaron Wider, CEO of HTFC Corp.[1] *See GMAC Bank v. HTFC Corp.,* 248 F.R.D. 182 (E.D.Pa.2008).

This action arises out of a contract dispute over the selling and servicing of mortgage loans between Plaintiff GMAC Bank and Defendant HTFC Corp. GMAC attempted to depose Wider over two days on September 26 and November 8, 2007. Due to Wider's abusive, obstructive, and evasive behavior, and Ziccardi's inaction in the face of Wider's pervasive misconduct, GMAC's efforts to depose Wider were frustrated. *See GMAC,* 248 F.R.D. 182 (more fully describing the events occurring at Wider's deposition). After providing notice and several opportunities to be heard, the Court issued its February 29, 2008 memorandum and order, in which it held that "Wider's conduct was outrageous" and "Ziccardi's complicity is inexcusable," and sanctioned them jointly and severally under Federal Rules of Civil Procedure 30(d)(2) and 37(a)(5)(A). *Id.* at 198–99. Ziccardi now moves for reconsideration of the sanctions order, arguing, inter alia, that the Court did not provide him with adequate notice of the sanctions being considered.

1. After filing the motion for reconsideration *pro se,* Ziccardi retained counsel, who adopted the *pro se* motion.

Before imposing sanctions, due process ordinarily requires that the Court provide the person subject to sanctions with notice of: 1) the reason for the sanctions, 2) the form of the sanctions, and 3) the legal rule authorizing the sanctions. *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir.1997). The purpose of these requirements is to ensure that the person subject to sanctions has the ability to mount a meaningful defense and rebut the charges made against him by the Court. *Id.* Accordingly, if the notice provided is sufficient to ensure that the person subject to sanctions can mount a meaningful defense to the Court's charges, that notice is constitutionally valid, even if it does not state with precision the legal rule authorizing sanctions. *Id.*

In this case, as explained further below, the notice provided to Ziccardi satisfied the requirements of due process. First, Ziccardi received notice several times that the reason for the sanctions was his inaction in the face of Wider's pervasive misconduct. Second, Ziccardi was put on notice that the Court was considering imposing a financial sanction that would compensate the injured party for the expenses it incurred as a result of the failed deposition, including notice of and an opportunity to object to the exact amount of the monetary sanctions. Finally, while Ziccardi did not receive notice that the Federal Rules of Civil Procedure governed the sanctions being considered by the Court, the notice that was provided enabled him to rebut the charges being considered by the Court and mount a meaningful defense. Accordingly, the motion for reconsideration will be denied.

## I. BACKGROUND

In light of the procedural due process issues raised by the motion for reconsideration, the Court will review in detail the proceedings relating to the February 29, 2008 memorandum and order imposing sanctions upon Ziccardi.

### A. *Motion to Compel and Initial Conference*

On November 28, 2007, Plaintiff GMAC Bank filed a motion to compel the deposition testimony of Wider, and for sanctions. *See* Pl.'s Mot. to Compel (doc. no. 34). The motion sought payment by HTFC of the fees and expenses incurred by GMAC in taking the deposition and filing the motion to compel, pursuant to Federal Rules of Civil Procedure 30 and 37. The motion did not seek any sanctions against Ziccardi; rather, it sought an order "requiring HTFC to pay the expenses incurred by GMAC in taking the previous deposition and making this Motion, including its reasonable attorney's fees and costs," citing Federal Rules of Civil Procedure 30 and 37. *Id.* at 1.

On December 7, 2007, the Court held a conference with counsel for both parties by telephone. At the conference, the Court afforded counsel an opportunity to be heard on the motion to compel. The Court then offered its preliminary impression that Wider's conduct implicated Rule 37(a)(4) and "the inherent power of the Court" to ensure that "civil proceedings are conducted in the manner which is dignified and which protects the administration of justice." Tel. Conf. Tr. 5–6, Dec. 7, 2007 (doc. no. 42).

The Court also addressed defense counsel's conduct:

> There is one matter of further concern here in the case, Mr. Ziccardi, that really involves the conduct of counsel, and I'm not entirely sure how we should proceed in this matter. That is, under the Code of Professional Conduct, counsel has certain obligations as an officer of the court which have to be harmonized with counsel's obligations to provide zealous representation. But in this particular case, once a witness deponent conducts himself or herself in the manner which is designed to obstruct the proceedings, I don't think counsel can just sit idly by and do nothing. I would equate it to a situation where a witness is providing false and perjurious testimony and counsel is aware of it, and under the Rules it requires that counsel has an obligation to correct it and/or withdraw from the proceedings. And I think that at least at first glance, Mr. Ziccardi, I think your conduct implicates the Rules of Professional Conduct 3.4, 3.5 and 8.4. And it is with regret that I must conclude that. It doesn't mean

> you have violated, but they have been implicated and I think they need to be explored. I will issue a rule to show cause why your pro hac vice admission should not be revoked or whether this matter should be referred to a disciplinary board, and whether or not financial penalty should also be imposed....

*Id.* at 7–8. The Court additionally noted that this is a "serious matter" and that "a full hearing on the merits" would be held. *Id.* at 8.

B. *Rule to Show Cause and Hearing*

The day of the telephone conference, the Court issued a rule to show cause, which asked Ziccardi to "show cause why he should not be sanctioned for his conduct during the deposition of Aaron Wider on September 26, 2007 and November 8, 2007," "for the reasons set forth in the telephone discovery conference on December 7, 2007." Rule to Show Cause, Dec. 7, 2007 (doc. no. 40). The rule additionally notified Ziccardi that Rules 1.1, 1.2, 1.3, 3.4, 3.5, and 8.4 of the Pennsylvania Rules of Professional Conduct would be considered by the Court in deciding whether to impose sanctions. *Id.*

On December 21, 2007, the Court began the hearing on the rule to show cause by stating:

> Notice was provided to counsel and to the parties in connection with the motion to compel, which implicates conduct under Rule 30(c)(3), as well as 30[ (d) ](2), and sanctions under Rule 37. In connection with the rule to show cause, the Court will consider counsel's duty during the course of the deposition [as] it implicates a number of provisions of the Pennsylvania Rules of Professional Conduct.

Hr'g Tr., Dec. 21, 2007 (doc. no. 47), at 2.

The Court then directly addressed Ziccardi: "frankly, as I told you over the telephone, I was really taken aback. I had just never seen a performance such as Mr. Wider's performance there, and also about your inability to control the situation in some form." *Id.* at 4. Ziccardi responded by acknowledging that Wider's conduct was "inappropriate," and that Ziccardi "tried to stop that from happening," including making "significant efforts" that occurred "off the record," and thus are not apparent on the deposition transcript. *Id.* at 8. Ziccardi argued that taking such breaks "did work for a while," but that "we just could not continue to take breaks." *Id.* at 8–9.

The Court responded as follows:

> [I] do not doubt that off the record you made every effort, you don't have to go into that. I'm limiting myself to what is apparent on the record, including whether the lawyers shall not engage in conduct intended to disrupt the tribunal, that includes a deposition, that's Rule of Professional Conduct 3.5, Comment 5. It also involves attempts to unlawfully obstruct another party's access to evidence, including obstructive tactics in the discovery process, that's Professional Conduct Rule 3.4, Comment 1. There are—Rule 3 requires a lawyer to take reasonable remedial measures if a lawyer comes to know that a client who is testifying in a deposition has offered evidence that is false. The point here is that, if the conduct is not appropriate conduct and it is attempting to obstruct the administration of justice, a lawyer can't just sit idly by and allow the conduct to proceed any more than if a person is testifying falsely you can allow perjurious testimony to go forward. This conduct, particularly the level of hostility, profanity and obscenities, have nothing to do with the case. You can't sit idly by and allow that to happen and, if the client continues to do it, then you have to withdraw. You can't just sit there and allow that to happen.

*Id.* at 13–14.

Ziccardi responded by arguing that his "goal was to get this done, was to accomplish this, to let counsel get his deposition," adding that withdrawal would not have served his client's interests and would only have caused further delay. *Id.* at 14.

C. *Supplemental Briefing*

At the hearing on the rule to show cause, after counsel for both sides had concluded their arguments, the Court indicated that it would afford them a round of supplemental

briefing. The Court then summarized the applicable rules:

> [T]he Court will address what is the measure[ ] [of] relief that needs to be imposed in this case, one that will permit litigation to proceed on the merits and that will compensate the injured party for expenses incurred as a result of the deponent's conduct; and, three, which will vindicate the administration of justice from what appears to be a frontal assault. The Rules of Civil Procedure address this conduct and the Court will consider Rule 30(c)(2), Rule 30(d)(2) and Rule 37(a)(5). Among the remedies which are available under those rules are the resumption of the deposition in Philadelphia under the superintendency of the magistrate judge, imposition of reasonable attorney's fees for bringing this motion, as well as reasonable attorney's fees for implementing the relief of a further deposition, and other financial sanctions may be appropriate. Concerning the rule to show cause, that also implicates, as I have now said on at least two occasions, the role of counsel during the course of depositions. And I had identified previously in the rule to show cause Pennsylvania Rule of Professional Conduct 3.4 or 3.5, 8.4, and as well as 3.2 and 3.3. Under those rules, if found to have been violated, the Court may consider directing that counsel take further continuing education and remedial education in the area, pay a financial sanction, the Court may revoke the pro hac vice admission and, ultimately and most seriously, refer the matter to the disciplinary board.

*Id.* at 17–18. The Court concluded the hearing by permitting GMAC to submit, along with its supplemental memorandum of law, "a detailed itemization of counsel fees." *Id.* at 19. Defense counsel did not object. *Id.*

GMAC submitted a supplemental memorandum, along with the promised statement of costs and fees (doc. no. 49). Neither Ziccardi nor Wider objected to the amount of costs and fees sought. Ziccardi submitted a supplemental memorandum of law on the same day (doc. no. 48). Ziccardi did not specifically address any Federal Rule of Civil Procedure; he did, however, address several Rules of Professional Conduct, and further addressed several comments made by the Court at the hearing on the rule to show cause.

For example, Ziccardi directly addressed the Court's concern that his inaction in the face of Wider's conduct obstructed the deposition:

> Based on this Court's statements during the initial and subsequent hearing on plaintiff's motion to compel, this Court is concerned that R.P.C. 8.4(d) may have been implicated in that counsel's conduct may have been prejudicial to the administration of justice, which includes depositions. As set forth above, defendant's counsel did not sit idly by and allow the conduct to occur. Instead, he took such action as he deemed appropriate given the circumstances and his obligation to represent his client. Whether such action was sufficient to control Mr. Wider must be determined at the time such conduct occurred, and not with the benefit of hindsight, as this situation was unique and not commonplace.

Def.'s Supp. Mem. of Law 12.

Ziccardi also reiterated that "the communications in which counsel admonished Mr. Wider occurred off the record," adding that Ziccardi did not "encourage," "instruct," or "influence" Wider's improper conduct. *Id.* at 5–7. Ziccardi additionally argued that he "did not interfere in plaintiff's ability to depose Mr. Wider," "remained respectful of plaintiff's counsel and attempted to move the deposition along so plaintiff could obtain discovery," adding that his own conduct during the deposition was in no way "disruptive." *Id.* at 10.

### D. *Memorandum and Order Imposing Sanctions*

On February 29, 2008, the Court issued the memorandum and order sanctioning Wider and Ziccardi, jointly and severally, in the amount of $29,322.61. *See GMAC Bank v. HTFC Corp.,* 248 F.R.D. 182 (E.D.Pa. 2008). This amount is based on the costs and fees incurred by GMAC in connection with Wider's deposition and the motion to

compel further deposition testimony from Wider.

The memorandum first discussed Wider's improper conduct, concluding that Wider violated Federal Rule of Civil Procedure 37(a)(3)(B)(i) by failing to answer and providing evasive and incomplete answers to deposition questions, and imposing sanctions under Rule 37(a)(5)(A). *See id.* at 193. The Court further concluded that Wider's conduct violated Rule 30(d)(2) by frustrating his fair examination, and imposed sanctions under that rule as well. *See id.* at 194.

The memorandum next turned to Ziccardi, finding that "throughout the deposition, notwithstanding the severe and repeated nature of Wider's misconduct, Ziccardi persistently failed to intercede and correct Wider's violations of the Federal Rules." *Id.* at 194–95.

> Ziccardi sat idly by as a mere spectator to Wider's abusive, obstructive, and evasive behavior; and when he did speak, he either incorrectly directed the witness not to answer, dared opposing counsel to file a motion to compel, or even joined in Wider's offensive conduct.

*Id.* at 195.

The Court next dismissed Ziccardi's defenses: that he "made sufficient efforts to intervene and curb his client's misconduct," including efforts "off the record"; that his actions were "not taken in bad faith"; and that his conduct was justified by confidentiality concerns. *Id.* at 196–97. The Court then imposed sanctions, finding, as with Wider, that Ziccardi's conduct violated Rules 37(a)(3)(B)(i) and 30(d)(2) of the Federal Rules of Civil Procedure, and that sanctions were warranted under Rules 37(a)(5)(A) and 30(d)(2).

As to Rule 37(a)(3)(B)(i), the Court noted that it was authorized by Rule 37(a)(5)(A) to impose sanctions on Ziccardi, who was the "attorney advising" Wider's "failure to answer" and "evasive or incomplete" answers to deposition questions. *Id.* at 197. The Court stated that although Ziccardi "did not actively counsel Wider on the record to provide evasive or incomplete answers," he repeatedly "failed to take remedial steps to curb his client's misconduct." *Id.* The Court reasoned that sanctions were warranted because Wider's violations of the rules were "so frequent and blatant," that "[u]nder these circumstances," Ziccardi's silence "constitute[s] the functional equivalent of 'advising' Wider's misconduct" under Rule 37(a)(5)(A). *Id.* at 197–98. Therefore, the Court sanctioned Ziccardi, jointly and severally with Wider, ordering him to pay "the $13,026.00 in fees and expenses that GMAC incurred in connection with the motion to compel." *Id.* at 198. This amount was based on GMAC's statement of fees, to which Ziccardi did not object. *See id.* at 193.

Turning next to Rule 30(d)(2), the Court held that Ziccardi's conduct violated that rule in that it "imped[ed], delay[ed], or frustrate[d] the fair examination of the deponent." *Id.* at 198. The Court specifically noted that Ziccardi failed to "prevent[ ] Wider from improperly interposing his own objections" and "curb[ ] Wider's abusive bullying of counsel for GMAC," and that his conduct was instead characterized by his "persistent inaction in the face of Wider's gross misconduct." *Id.* at 198. The Court thus sanctioned Ziccardi, ordering him to pay, jointly and severally with Wider, "the $16,296.61 in costs and fees incurred by GMAC in connection with the deposition." *Id.* This amount was also based on GMAC's uncontested statement of fees and expenses. *See id.* at 194.

E. *Proceedings Following the Sanctions Order*

On March 21, 2008, in light of the filing of the instant motion for reconsideration, the Court granted a motion filed by Ziccardi to stay enforcement of the sanctions order until the motion for reconsideration was resolved (doc. no. 74). On June 18, 2008, the Court held a hearing on the motion for reconsideration and all other pending motions.

At the hearing, counsel for Ziccardi briefly argued that Ziccardi was not afforded adequate notice of the sanctions being considered by the Court. *See* Hr'g Tr. 5:16–8:13. The majority of counsel's time, however, was spent arguing "the merits," i.e., rearguing the issues raised by the rule to show cause. *Id.* at 8:14–26:6. Counsel reemphasized that

Ziccardi instructed Wider off the record to cease disrupting the deposition. *Id.* at 11:11–13:14. Counsel also repeated Ziccardi's contention that the Court's analogy to an attorney's affirmative obligation to act when his client commits perjury is inapposite here. *Id.* at 13:15–20:25. Finally, counsel argued that, although an attorney does have a duty to terminate a deposition and cannot "sit there like a potted plant" when a client refuses to cease his obstructive behavior, that duty had not yet "kick[ed] in" in this case. *Id.* at 18:21–23:6.

## II. LEGAL STANDARD

A motion for reconsideration may be granted under certain limited circumstances:

> The purpose of a motion for reconsideration, we have held, is to correct manifest errors of law or fact or to present newly discovered evidence. Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

*Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999) (internal citations and quotations omitted).

"Parties are not free to relitigate issues that the Court has already decided, nor should parties make additional arguments which should have been made before judgment." *Smith v. City of Chester,* 155 F.R.D. 95, 97 (E.D.Pa.1994) (asking litigants to "evaluate whether what may seem to be clear error of law is in fact simply a disagreement between the Court and the litigant"); *Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993) ("It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly." (quotation omitted)).

Ziccardi argues that the Court's sanctions order should be reconsidered for two reasons. First, Ziccardi seeks another hearing, arguing that he did not receive adequate notice that the Court was considering sanctioning him under the Federal Rules of Civil Procedure, as opposed to the Pennsylvania Rules of Professional Conduct. Second, Ziccardi argues that the sanctions order should be reversed because the Court has committed clear errors of law and fact.

## III. PROCEDURAL DUE PROCESS

Ziccardi contends that the Court committed a clear error of law by failing to put him on adequate notice that it was considering sanctions under the Federal Rules of Civil Procedure, thus denying him a meaningful opportunity to be heard.

### A. *Due Process Requirements*

In considering sanctions upon an attorney, "courts must provide the attorney with due process." *In re Tutu Wells Contamination Litig.,* 120 F.3d 368, 379 (3d Cir.1997), *criticized on other grounds by Comuso v. Nat'l R.R. Passenger Corp.,* 267 F.3d 331, 339 (3d Cir.2001).[2] The Third Circuit has stated that "the fundamental requirements of due process—notice and an opportunity to respond—must be afforded before any sanction is imposed." *Id.* at 379. In *Tutu Wells,* the Third Circuit went so far as to say:

> The party against whom sanctions are being considered is entitled to notice of the *legal rule on which the sanctions would be based,* the *reasons for the sanctions,* and the *form of the potential sanctions.* With-

2. In *Cunningham v. Hamilton County,* 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999), the Supreme Court held that a sanctions order disqualifying an attorney was not immediately appealable because it "could be effectively reviewed on appeal from a final judgment." *Comuso,* 267 F.3d at 338 (citing *Cunningham,* 527 U.S. at 205–07, 119 S.Ct. 1915). *Cunningham* concerned only the appealability of a sanctions order, not due process requirements. In *Comuso,* the Third Circuit held that *Tutu Wells* was "no longer good law to the extent that [it] conflict[s] with *Cunningham.*" 267 F.3d at 339. The Court did not disapprove of the due process analysis in *Tutu Wells,* which has been applied and cited with approval in several subsequent cases. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175, 193 (3d Cir.2002); *Saldana v. Kmart Corp.,* 260 F.3d 228, 236 (3d Cir.2001).

out such notice, the opportunity to be heard would be meaningless: only with this information can a party respond to the court's concerns in an intelligent manner. In other words, a party cannot adequately defend himself against the imposition of sanctions unless he or she is aware of the issues that must be addressed to avoid the sanctions.... [D]ramatic differences in the relief being considered by the district court may lead to substantially different (e.g., more detailed, differently directed) responses by the alleged offender.

*Id.* at 380 (emphases added) (quotations omitted).

The Third Circuit was careful to note, however, that it was not announcing a bright-line rule; rather, "the precise contours of the process that is due var[y] given the particular context." *Id.* The court clarified its holding with a discussion of its prior cases, which warrants quoting at length:

> A brief examination of ... our cases illustrates the operation of this notice rule and the policy justifications supporting it. In *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215 (3d Cir.1995), we rejected a party's argument that he was denied adequate notice because of the failure to notify him that sanctions under 28 U.S.C. § 1927, in addition to those under Rule 11, were being considered. We noted that a showing of bad faith conduct is required to impose sanctions under § 1927 but is not required under Rule 11. Without notice that possible § 1927 sanctions were at stake, a party might not employ his opportunity to be heard to rebut charges of bad faith. However, our examination of the context and the factual background of the case revealed that the party was well aware that he was being charged with bad faith conduct. *That he was unaware of the possible § 1927 sanctions was immaterial, for he knew that he would need to confront the charge of bad faith conduct to defend himself in the sanction proceeding. In short, our concern in Fellheimer was that the party in fact had the opportunity to mount a meaningful defense. When it became evident that under the circumstances he did, we determined that the notice had been adequate.*
>
> In our discussion in *Fellheimer*, we distinguished *Jones v. Pittsburgh National Corp.*, 899 F.2d 1350 (3d Cir.1990). In *Jones*, the party was not explicitly notified of the possibility of § 1927 sanctions, nor did the context or factual background of the case suggest that he was charged with bad faith conduct. Because the party was not on notice as to the particular factors that he must address if he is to avoid sanctions, notice was inadequate.

*Id.* at 379–80 (emphasis added). In short, the issue is whether Ziccardi was provided with notice sufficient to enable him to mount a meaningful defense.

B. *Process Afforded to Ziccardi*

This is not a case where no notice or opportunity to be heard was given prior to the imposition of sanctions. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 183 (3d Cir.1999) (vacating sanctions order and remanding because no notice or hearing was afforded). In fact, Ziccardi does not dispute that he received several notices that the Court was considering sanctions and several opportunities to be heard. Rather, Ziccardi makes a narrower argument: he argues that the notices given by the Court prior to the hearings were defective, and thus that he was unable to meaningfully defend his conduct at the hearings. As noted above, before imposing sanctions, a court must typically provide notice of the reason for the sanctions, the form of the sanctions, and the legal rule authorizing the sanctions. *Tutu Wells*, 120 F.3d at 380. Each aspect of the notice provided to Ziccardi will be addressed in turn.

1. *Reason for the sanctions*

The logic behind requiring notice of the reason the Court is considering sanctions is readily discernable: "[A] party cannot adequately defend himself against the imposition of sanctions unless he or she is aware of the issues that must be addressed to avoid the sanctions." *Tutu Wells*, 120 F.3d at 380.

In this case, the Court on multiple occasions provided Ziccardi with specific notice of the issues to be addressed in order to

avoid sanctions. At the initial telephone conference and the hearing on the rule to show cause, the Court described Ziccardi's conduct at Wider's deposition with particularity, and explicitly stated its reason for considering sanctions. *See* Tel. Conf. Tr. 7–8, Dec. 7, 2007 ("[O]nce a witness deponent conducts himself or herself in the manner which is designed to obstruct the proceedings, I don't think counsel can just sit idly by and do nothing. I would equate it to a situation where a witness is providing false and perjurious testimony and counsel is aware of it, and under the Rules it requires that counsel has an obligation to correct it and/or withdraw from the proceedings."); Hr'g Tr. 13–14, Dec. 21, 2007 ("[I]f the conduct is not appropriate conduct and it is attempting to obstruct the administration of justice, a lawyer can't just sit idly by and allow the conduct to proceed any more than if a person is testifying falsely you can allow perjurious testimony to go forward. This conduct, particularly the level of hostility, profanity and obscenities, ha[s] nothing to do with the case. You can't sit idly by and allow that to happen and, if the client continues to do it, then you have to withdraw. You can't just sit there and allow that to happen.").

Since the initial telephone conference, the Court's rationale for imposing sanctions has remained the same: "What is remarkable about Ziccardi's conduct is not his actions, but rather his failure to act." *GMAC,* 248 F.R.D. at 197. Therefore, Ziccardi cannot have been unfairly surprised when the Court sanctioned him for having "persistently failed to intercede and correct Wider's violations of the Federal Rules," and having "sat idly by as a mere spectator to Wider's abusive, obstructive, and evasive behavior," notwithstanding "the severe and repeated nature of Wider's misconduct." *Id.* at 194–95. Thus, Ziccardi had ample notice of the reason for the sanctions.[3]

2. *Form of sanctions*

Notice of the form of sanctions, including notice of the potential severity of the sanctions, is important because "dramatic differences in the relief being considered by the district court may lead to substantially different (e.g., more detailed, differently directed) responses by the alleged offender." *Tutu Wells,* 120 F.3d at 388.

■ At the initial telephone conference, the Court informed Ziccardi that it was considering imposing a "financial penalty." Tel. Conf. Tr. 7–8, Dec. 7, 2007. At the December 21, 2007 hearing on the rule to show cause, the Court reiterated that "a financial sanction" may be imposed upon him, noting that the "relief that needs to be imposed in this case" will "compensate the injured party for expenses incurred as a result of the deponent's conduct." Hr'g Tr. 17–18, Dec. 21, 2007. The sanctions actually imposed on Ziccardi amount to $29,322.61; as explained above, this amount is based on the costs and fees incurred by GMAC in both taking Wider's deposition and filing the motion to compel necessitated by the failure of that deposition. *See GMAC,* 248 F.R.D. at 194, 198. Ziccardi received advance notice of this amount through the fee petition submitted by GMAC, to which Ziccardi did not object. Thus, Ziccardi had ample notice of both the form and severity of the sanctions imposed.[4]

3. Ziccardi argues that notice was defective because the Court specified at the hearing, "I'm limiting myself to what is apparent on the record," but the Court's memorandum and order purportedly considered matters occurring off the record. Hr'g Tr. 13:19–22, Dec. 21, 2007. This argument is meritless. The analysis in the memorandum and order—consistent with the above statement—accepted as true Ziccardi's allegations that he admonished Wider off the record. *See GMAC,* 248 F.R.D. at 195 ("Even if this assertion is to be believed, Wider's continuing misconduct indicates that whatever efforts Ziccardi made were woefully ineffectual."). As such, Ziccardi's request for an "evidentiary hearing," Mot. for Recons. 1, is baseless. Because the Court has accepted as true Ziccardi's allegations that he admonished Wider off the record, no presentation of evidence is warranted.

4. Even if the Court had not provided Ziccardi with such specific notice, Ziccardi was certainly aware that the Court was considering serious sanctions. At the hearing on the rule to show cause, the Court emphasized that the events occurring at Wider's deposition were "a frontal assault" on the administration of justice, which caused the Court to be "taken aback" by Ziccardi's "inability to control the situation in some form." Hr'g Tr. 4, 17–18. At the initial telephone conference, the Court advised Ziccardi not only that monetary sanctions might issue, but

3. *Legal rule authorizing sanctions*

The only remaining question is whether Ziccardi was provided with a statement of the specific legal rule upon which sanctions would be based. He was not. The Court's oral and written notices to Ziccardi suggested that sanctions were being considered pursuant to the Pennsylvania Rules of Professional Conduct, not the Federal Rules of Civil Procedure. *See* Tel. Conf. 7–8; Rule to Show Cause, Dec. 7, 2007; Hr'g Tr. 2, Dec. 21, 2007. Thus, the relevant inquiry is: does the failure to state the specific rule authorizing sanctions render the otherwise detailed notice provided to Ziccardi inadequate? As explained above, the Third Circuit has set forth the analysis required to answer this question: the Court's notice is constitutionally adequate only if it enabled Ziccardi to "mount a meaningful defense," i.e., attempt to "rebut [the] charges" being considered by the Court. *Tutu Wells,* 120 F.3d at 379–80.

In *In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions,* 278 F.3d 175 (3d Cir.2002), the trial court gave notice to an attorney that sanctions under 28 U.S.C. § 1927 were being considered, but the court instead imposed sanctions pursuant to its inherent powers, requiring him to attach a copy of a report and recommendation discussing his misconduct to future applications for *pro hac vice* admission for the next five years. *Id.* at 191. The Third Circuit vacated the sanctions order, reasoning that "although [counsel] was clearly on notice that the court was empowered to make him pay for the increase in cost resulting from his vexatious conduct ... it is not as clear that [he] had notice that the court was considering requiring him to attach his scarlet letter to his *pro hac vice* admissions in the District of New Jersey." *Id.* at 193.

The logic of *Prudential* does not apply here. In *Prudential,* the court imposed an exotic and severe sanction that could only have been authorized under its inherent powers, not under § 1927. In this case, the Court did not impose any such sanction, but rather imposed the conventional sanction of payment of costs and fees. Moreover, as discussed above, Ziccardi was put on specific notice several times that the Court was considering a financial sanction with the goal of compensating GMAC for the expenses caused by the failed deposition. *See, e.g.,* Hr'g Tr. 17–18, Dec. 21, 2007.

Similarly, in *Jones,* 899 F.2d 1350—discussed in *Tutu Wells*—an attorney was notified that Rule 11 sanctions were being considered, but was instead sanctioned under § 1927. Because § 1927 requires a showing of bad faith, and Rule 11 does not, the attorney was not aware that he was being charged with bad faith conduct, and thus did not have a meaningful opportunity to refute such a charge. *See Tutu Wells,* 120 F.3d at 380 (discussing *Jones*). Accordingly, the failure to specify the legal rule upon which sanctions were based was fatal.

Here, Ziccardi was not deprived of any such opportunity to refute a charge. *See GMAC,* 248 F.R.D. at 196 (noting that finding of bad faith is not required). The notice in *Jones* was defective because it, in effect, deprived the attorney of the opportunity to argue against part of the charge; namely, that he had engaged in bad faith conduct. Here, Ziccardi received notice that the Court was considering sanctioning him for his inaction in the face of Wider's pervasive misconduct. Ziccardi defended against the charge of inaction by arguing that his intentions were good, that he made certain efforts off the record, and that the Court should not second-guess his decisions under difficult circumstances. The Court considered and rejected these arguments, and sanctioned him

also that more severe penalties might be imposed, such as the revocation of his *pro hac vice* admission and referral of the matter to the disciplinary board. Tel. Conf. Tr. 7–8. The Court reiterated this warning at the hearing on the rule to show cause, noting that it would consider "most seriously, refer[ring] the matter to the disciplinary board." Hr'g Tr. 18. Thus, having received notice that the Court's sanction could result in the most severe punishment—a disciplinary sanction, such as suspension or even disbarment—Ziccardi was aware that serious sanctions were being considered. Therefore, the fact that he did not prepare a "substantially different (e.g., more detailed, differently directed) respons[e]" cannot be blamed on the Court. *Tutu Wells,* 120 F.3d at 388.

for his "persistent inaction in the face of Wider's gross misconduct." *Id.* at 198. Accordingly, Ziccardi was not deprived of any opportunity to mount a defense; he mounted a comprehensive defense, but the Court rejected it.

Rather than *Prudential* and *Jones*, the decision in *Fellheimer* is instructive here. 57 F.3d 1215. In *Fellheimer*, the court noticed sanctions under Rule 11, but imposed sanctions under its inherent power, which usually requires a finding of bad faith. *Id.* at 1225. The Third Circuit distinguished *Jones*, reasoning that both the movant and the trial court had "made it clear that [they] suspected [the attorney] of having acted in bad faith" well in advance of any hearing on the sanctions motion. *Id.* at 1226. In other words, "the context and the factual background of the case revealed that the party was well aware that he was being charged with bad faith conduct." *Tutu Wells*, 120 F.3d at 380 (discussing *Fellheimer*). Therefore, because the attorney's ability to mount a meaningful defense was not in fact prejudiced, the Third Circuit refused to overturn the trial court's sanction "merely because the court applied the wrong label to the righteous use of its inherent sanction power." *Fellheimer*, 57 F.3d at 1227.

That is precisely what happened here. Ziccardi was on notice from the initial telephone conference on December 7, 2007 of the Court's charge that "once a witness deponent conducts himself or herself in the manner which is designed to obstruct the proceedings, I don't think counsel can just sit idly by and do nothing." Tel. Conf. Tr. 7–8. Ziccardi argued against this charge at both the hearing on the rule to show cause and in his supplemental memorandum; the Court simply disagreed with his argument. Thus, while Ziccardi did not receive notice that the Federal Rules of Civil Procedure governed the sanctions being considered by the Court, the notice that was provided enabled him to rebut the charges being considered by the Court and mount a meaningful defense. Therefore, the notice provided to Ziccardi was constitutionally adequate.

C. *Opportunity to Object to Fee Petition*

In addition to challenging the Court's notice of sanctions, Ziccardi argues that his procedural due process rights were violated because he was denied an opportunity to object to GMAC's request for attorney's fees.

As noted above, at the conclusion of the hearing on the rule to show cause, the Court commented that the "measure[ ] [of] relief that needs to be imposed in this case" is one that "will compensate the injured party for expenses incurred as a result of the deponent's conduct." Hr'g Tr., Dec. 21, 2007, at 17. With reference to the rule to show cause, the Court noted that it "may consider directing that counsel ... pay a financial sanction." *Id.* at 18. Immediately following this discussion, the Court noted that the matter would be taken under advisement, and permitted the parties to make supplemental submissions by January 3, 2008. The Court then stated: "Promptly thereafter, then I will issue a decision on these matters now that the parties have had an opportunity to respond and also have been afforded an opportunity to make further submissions in the case." *Id.* at 18–19. When asked if there were any further issues, counsel for GMAC stated: "[A]s you have allowed for an additional time for submissions, within that time period we will submit a detailed itemization of counsel fees." Ziccardi did not object, and the Court permitted GMAC to make the submission. *Id.* at 19.

On January 3, 2008, both parties filed supplemental submissions. GMAC's submission included two affidavits listing the costs and fees incurred by various counsel, along with the hourly rates of counsel (doc. no. 49). At no time prior to the issuance of the February 29, 2008 sanctions order did Ziccardi object to GMAC's fee petition. Ziccardi now argues that he had no opportunity to object to the fee petition because the Court did not instruct him to file any such objection. Ziccardi contends that the Court's statement that a decision would be forthcoming "promptly" after the January 3 submissions foreclosed any opportunity for him to object to the fee petition. This argument lacks merit.

It is true that "[t]he burden is on the party filing a fee petition to establish that

the rate claimed is reasonable." *Keenan v. City of Phila.*, 983 F.2d 459, 473 (3d Cir. 1992). "To meet this burden, the fee petitioner must 'submit evidence supporting the hours worked.'" *Walton v. Massanari,* 177 F.Supp.2d 359, 363 (E.D.Pa.2001) (quoting *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990)). It is well-established, however, that "in this circuit, a court may not reduce counsel fees *sua sponte* as 'excessive, redundant, or otherwise unnecessary' in the absence of a sufficiently specific objection to the amount of fees requested." *United States v. Eleven Vehicles, Their Equip. & Accessories,* 200 F.3d 203, 212 (3d Cir.2000).[5] This is because "[o]nly with proper notice can the claimant know which request to defend as reasonable." *Id.* Thus, the Third Circuit has stated:

> [W]hen an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard uncontested affidavits filed by a fee applicant.

*Id.* at 212 (quotation omitted). It is therefore the burden of the party seeking a reduction in the fee award to make "a sufficiently specific objection to the substance of a fee request." *Id.*

In this case, GMAC submitted a fee petition on January 3, 2008. The fee petition attached affidavits stating the number of hours billed, the billing attorneys, and their hourly rates. The sanctions order did not issue until February 29, 2008. Ziccardi thus had 57 days to object to the fee petition. Ziccardi attempts to blame the Court for his failure to do so, arguing that the Court's statement that a decision would be issued "promptly" after the submissions were made on January 3, 2008, somehow foreclosed him from objecting to the fee petition. The case law, however, clearly places the burden on him to object to the fee petition; in fact, it is *the Court* that was foreclosed from diminishing the amount of attorney's fees sought absent a "sufficiently specific" objection from Ziccardi.[6] Accordingly, no violation of Ziccardi's due process rights has occurred.

## IV. SUFFICIENCY OF ZICCARDI'S CONDUCT

Even if the Court had failed to provide Ziccardi with adequate notice of the sanctions being considered, the relief to which Ziccardi would be entitled would be adequate notice and another opportunity to be heard. *See Martin v. Brown,* 63 F.3d 1252, 1262 n. 12 (3d Cir.1995) ("Because we conclude that the district court failed to afford [the attorney] procedural due process, we believe it unnecessary and inappropriate for us to decide on this record her contention that she engaged in no sanctionable misconduct. We believe the district court must first address these matters on remand, after [she] is afforded the procedural safeguards required by the Due Process Clause.").

However, the Court has for all practical purposes already provided this relief to Ziccardi. As explained above, at the June 18, 2008 hearing on the instant motion, Ziccardi was given an opportunity to—and did in fact—reargue the merits of the rule to show cause through his counsel. *See* Hr'g Tr. 27, June 18, 2008 (counsel for Ziccardi stating that "to some extent ... a due process matter may have been corrected by this hearing"). The arguments offered—all of which

5. This prohibition did not preclude the Court from reducing the amount of attorney's fees awarded in connection with Wider's deposition to 75% of the amount sought. The reduction to 75% was made because the Court found "that approximately 75% of the time spent deposing Wider was time wasted due to Wider's frustration of fair examination." *GMAC,* 248 F.R.D. at 194. The reduction was not made because the Court found that GMAC's fee petition was unreasonable or otherwise deficient, but rather pursuant to the Court's authority to fashion an "appropriate sanction" under Rule 30(d)(2).

6. In light of Ziccardi's failure to object to the fee petition, the Court does not reach the argument that the petition was insufficiently specific. It nonetheless bears mention that the fee petitions were supported by affidavits breaking down the number of hours billed by both task performed and by attorney, stating the hourly rate of each attorney, and listing separately the amount of costs incurred. As such, the petitions were "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Keenan,* 983 F.2d at 473.

have already been considered by the Court—are improper bases for a motion for reconsideration; nonetheless, the Court will briefly discuss their merits for the sake of completeness.

First, Ziccardi argues that he did not "snicker" at Wider's conduct and did not "dare" opposing counsel to file a motion to compel. As the Court has previously explained, these findings of fact were not necessary to the Court's decision to sanction Ziccardi, which was based on his inaction, not his actions. *See GMAC,* 248 F.R.D. at 197.[7]

Second, Ziccardi argues that the Federal Rules do not impose a duty on a lawyer to admonish a client on the record against frustrating a deposition. The Court need not decide this issue, however, as the sanctions order was not dependent on any such duty. The Court did not refuse to consider Ziccardi's off-the-record efforts, but instead found them to be insufficient in light of both Wider's continuing misconduct and Ziccardi's on-the-record conduct.[8] *See id.* at 196.

Third, Ziccardi argued through his counsel at the June 18, 2008 hearing that, although he had an obligation to terminate the deposition eventually, that obligation had not "kick[ed] in" yet in this case, and it is improper for the Court to second-guess an attorney's decision as to the timing of when to terminate a deposition. It is true that the timing of the decision to terminate a deposition may be difficult to pin down in some cases. The discovery process would certainly not benefit from the premature termination of depositions at the slightest sign a problem. Moreover, in close cases, it may be difficult for the Court to second-guess the attorney's judgment; after all, only the attorney actually attended the deposition and witnessed the specific problems first-hand. But this is not a close case. As the Court previously explained, "Ziccardi allowed the deposition to drag on for over two days and nearly twelve hours of testimony, much of which was an unmitigated waste of time and resources. Ziccardi never once suggested that the ill-fated deposition be adjourned." *GMAC,* 248 F.R.D. at 196. Thus, although courts would be wise to hesitate in close cases before second-guessing an attorney's judgment as to when a deposition should be terminated, no such pause is warranted here.

## V. CONCLUSION

For the foregoing reasons, Joseph Ziccardi's motion for reconsideration (doc. no. 68) will be denied. Additionally, the motion for reconsideration having been disposed of, the stay of enforcement of the Court's February 29, 2008 order will be lifted. An appropriate order follows.

### *ORDER*

**AND NOW,** this **12th** day of **August, 2008,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Joseph Ziccardi's motion for reconsideration (doc. no. 68) is **DENIED.**

**IT IS FURTHER ORDERED** that the stay of enforcement of the Court's February 29, 2008 order is **LIFTED.**

**AND IT IS SO ORDERED.**

7. Aside from an illustrative purpose, the "snicker" and "dare" findings of fact were used in dicta to support a finding of bad faith. *See GMAC,* 248 F.R.D. at 196. This finding was not necessary to the Court's imposition of sanctions under Federal Rules 30(d)(2) and 37(a)(5)(A), which do not require a finding of bad faith. *See GMAC,* 248 F.R.D. at 196.

8. As the Court assumed Ziccardi's allegations of his off-the-record intervention to be true, the affidavits attached to the motion for reconsideration attesting to such off-the-record efforts serve no purpose.