**Don Juan BRITT, Plaintiff–Appellee,**

**v.**

**Maria E. GARCIA, Department of Correction, Classification and Movement Analysis, Terry David, D.O.C.'s Classification and Movement, Superintendent John McGinnis, Superintendent Hans Walker, Auburn Correctional Facility, Correction Counselor Robert**

Mitchell, Auburn Correctional Facility S.H.U., Superintendent Charles Griener, Sing Sing Correctional Facility, Defendants,

Commissioner Glenn S. Goord of the Department of Corrections, Deputy Superintendent for Security, William Connolly, in their individual capacities, Defendants–Appellants.

Docket No. 05–0641–PR.

United States Court of Appeals, Second Circuit.

Argued: Dec. 1, 2005.

Decided: July 25, 2006.

Jean Lin, Assistant Solicitor General, Office of the Attorney General of the State of New York (Eliot Spitzer, Attorney General of the State of New York, Michael S. Belohlavek, Deputy Solicitor General, of counsel), New York, NY, for Defendants–Appellants.

Paul E. Kerson, Leavitt, Kerson & Duane, (John F. Duane, Ira R. Greenberg, of counsel), New York, NY, for Plaintiff–Appellee.

Before CARDAMONE, LEVAL, and SACK, Circuit Judges.

SACK, Circuit Judge.

Plaintiff-appellee Don Juan Britt, a state prisoner incarcerated at the Sing Sing Correctional Facility in Ossining, New York, brought suit in the United States District Court for the Southern District of New York against various New York State Department of Correctional Services and correctional facility officials. He alleged that the defendants violated his rights under the Eighth Amendment to the United States Constitution by failing to protect him from assaults by other inmates. Britt further alleged that the defendants conspired to violate his civil rights. He also asserted several state-law claims. The case proceeded to trial, and a jury found defendants-appellants Glenn S. Goord and William Connolly liable to Britt for conspiracy to violate his civil rights under 42 U.S.C. § 1985(3) and for negligence under New York law. The jury assessed both compensatory and punitive damages against Goord and Connolly.

Subsequently, the district court (Lawrence M. McKenna, *Judge)* granted Goord and Connolly's post-verdict motion to dismiss Britt's negligence claim. The court also ordered a new trial on the issue of punitive damages. The court denied Goord and Connolly's renewed motion for judgment as a matter of law, however, rejecting their claim of qualified immunity and their contention that the evidence presented at trial was insufficient for the jury to find them liable to Britt under section 1985(3).

Goord and Connolly now bring an interlocutory appeal from the district court's denial of their renewed motion for judgment as a matter of law on qualified immunity grounds. Goord and Connolly also urge us to exercise pendent appellate jurisdiction to review the district court's decision that the evidence presented at trial was sufficient to support liability under section 1985(3). We conclude that we have jurisdiction to decide this appeal insofar as the appellants argue that they are entitled

to qualified immunity on the basis of the jury's answers to questions posed on a special verdict sheet, but we also conclude that the appellants' argument is without merit. We decline to exercise pendent appellate jurisdiction to decide the remainder of the appeal. We therefore affirm the district court's order in part and dismiss the remainder of the appeal for lack of appellate jurisdiction.

## BACKGROUND

On October 21, 1998, while serving a state sentence for a felony conviction at Sing Sing Correctional Facility in Ossining, New York, plaintiff-appellee Don Juan Britt was assaulted by another inmate, who slashed Britt's head, neck, and back. Trial Tr., Apr. 27, 2004, at 78–80. He was rushed to St. Agnes Hospital, where he received multiple stitches to close his wounds. *Id.* at 80–82. Upon his return to Sing Sing, he was placed in protective custody but was allegedly attacked at least once more by another inmate. *Id.* at 82–84. On December 31, 1998, Britt's prison cell was allegedly set on fire by a person or persons unknown. Trial Tr., Apr. 28, 2004, at 284–86.

On March 5, 1999, Britt, acting *pro se*, brought suit in the United States District Court for the Southern District of New York seeking compensation for his injuries. An amended complaint followed on April 12, 1999.

On April 25, 2003, after Britt had obtained counsel, he filed a second amended complaint. In it, he alleged that the defendants had violated his Eighth Amendment rights by failing to protect him from assaults by other inmates. Second Am. Compl.¶¶ 29–30. He also alleged that the defendants had conspired to violate his civil rights, *id.* ¶¶ 31–33, and asserted several state-law claims, *id.* ¶¶ 34–44. Subsequently, the district court dismissed Britt's claims against all defendants other than Glenn S. Goord, commissioner of corrections, William Connolly, deputy superintendent of Sing Sing, and Jacqueline Hood, a corrections officer. *See Britt v. Dep't of Corr.*, 2004 WL 868371, at *1, 2004 U.S. Dist. LEXIS 6940, at *1 (S.D.N.Y. Apr. 21, 2004).

On April 26, 2004, the case proceeded to a jury trial against the three remaining defendants in their individual capacities on five of Britt's claims that the defendants were liable to him: (1) under 42 U.S.C. § 1983 for violating the Eighth Amendment; (2) under 42 U.S.C. § 1985(3) for conspiring to violate the Eighth Amendment;[1] (3) under New York law for intentional infliction of emotional distress; (4) under New York law for negligence; and (5) under New York law on a theory of *respondeat superior.*

At the close of evidence, the district court dismissed Britt's *respondeat superior* claim. The defendants moved, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law on all of the plaintiff's remaining claims, arguing that the evidence presented at trial was

---

1. Britt's second amended complaint stated that his action was brought under the Eighth Amendment, 42 U.S.C. § 1983, and New York common law. Second Am. Compl. ¶ 12. The complaint did not mention 42 U.S.C. § 1985(3). The defendants appear to acknowledge that Britt's second cause of action—which, as noted above, alleges a conspiracy to violate civil rights—could be construed as arising under section 1983 rather than section 1985(3). *See* Appellants' Br. at 21–22. Britt nevertheless apparently accepted the defendants' characterization of this claim as alleging a violation of section 1985(3) in their proposed jury instructions, and the jury was so instructed. Trial Tr., Apr. 30, 2004, at 767–68; *see also Britt v. Connolly*, No. 99 Civ. 1672, slip op. at 3 n. 3 (S.D.N.Y. Jan. 4, 2005) (filed under seal).

insufficient to support them. *See* Trial Tr., Apr. 30, 2004, at 673–78. The district court reserved decision. *See id.* at 681.

On May 3, 2004, the jury returned a verdict in favor of Hood on all claims, but found Goord and Connolly liable to Britt under section 1985(3) and for negligence under New York law. The jury assessed compensatory damages against Goord and Connolly in the amounts of $100,000 and $50,000, respectively, and punitive damages in the amounts of $5 million and $2.5 million, respectively. The jury decided in favor of Goord and Connolly on all other claims.

Before judgment was entered, Goord and Connolly renewed their motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). They argued, *inter alia,* that they were entitled to qualified immunity.[2] Defendants' Mem. Of Law In Support Of Post–Trial Motions, dated June 2, 2004, at 22–26. The defendants also argued that the evidence presented at trial was insufficient to support a finding of liability under section 1985(3), and that the negligence verdict against them was barred by New York Correction Law § 24 and *Baker v. Coughlin,* 77 F.3d 12 (2d Cir.1996). Defendants' Mem. Of Law In Support Of Post–Trial Motions, dated June 2, 2004, at 8–16. The defendants moved in the alternative for a new trial pursuant to Federal Rule of Civil Procedure 59. *Id.* at 28–31. They also moved for a reduction of the jury's punitive damages award. *Id.* at 31–36.

In a memorandum and order dated January 4, 2005, the district court dismissed Britt's negligence claim. *Britt v. Connolly,* No. 99 Civ. 1672, slip op. at 8 (S.D.N.Y. Jan. 4, 2005) (filed under seal). The court denied the remainder of the defendants' motions except that for remittitur as to the jury's punitive damages award. *Id.* at 4–21. The court concluded that punitive damages "should not exceed $200,000 in the case of defendant Goord and $100,000 in the case of defendant Connolly" and ordered a new trial on the issue of punitive damages unless Britt agreed to remit all punitive damages in excess of those amounts. *Id.* at 21, 25.[3] When Britt declined to do so, the district court ordered a new trial on that issue.

Goord and Connolly appeal from that portion of the district court's order denying their renewed motion for judgment as a matter of law on qualified immunity grounds. Goord and Connolly also contend that we should exercise pendent appellate jurisdiction to review the district court's decision that the evidence presented at trial was sufficient for the jury to find them liable under section 1985(3).

---

**2.** Although, as noted above, the defendants moved for judgment as a matter of law at the close of the presentation of evidence at trial, the defendants appear to have failed to do so on the ground that they were entitled to qualified immunity at that point. *See* Trial Tr., Apr. 30, 2004, at 673–78. We have stated that "a posttrial motion for [judgment as a matter of law] can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury." *McCardle v. Haddad,* 131 F.3d 43, 51 (2d Cir.1997); *see also Provost v. City of Newburgh,* 262 F.3d 146, 161 (2d Cir.2001) (applying this rule to a claim of qualified immunity). We do not decide whether the defendants' apparent failure to raise qualified immunity in their motion for judgment as a matter of law precluded them from doing so upon renewal of that motion, however, because it appears that Britt did not raise this issue before the district court, and he does not raise it before us.

**3.** Britt also made several post-trial motions, all of which were denied by the district court. *See* Plaintiff's Post–Trial Mem. of Law, dated May 27, 2004; *Britt,* slip op. at 21–25. That portion of the district court's order is not before us.

## DISCUSSION

### I. Denial of Qualified Immunity

#### A. *Standard of Review*

To the extent that we have jurisdiction over an appeal from a district court's denial of qualified immunity, we review the district court's decision de novo. *Palmer v. Richards*, 364 F.3d 60, 63 (2d Cir.2004). We apply the same standard in reviewing the district court's denial that the district court was required to apply. *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir.2001). "Judgment as a matter of law is appropriate when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 43 (2d Cir.) (quoting Fed.R.Civ.P. 50(a)), *cert. denied*, 537 U.S. 1019, 123 S.Ct. 539, 154 L.Ed.2d 427 (2002).

#### B. *Qualified Immunity Doctrine*

"The doctrine of qualified immunity offers protection for 'government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir.2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (alteration incorporated)).

#### C. *The Appellants' Argument*

The appellants argue that they are entitled to qualified immunity on the basis of the jury's answers to the first three questions posed by the special verdict sheet. In response to the question, "With respect to plaintiff's claim that each of the defendants violated his constitutional rights in connection with the October 21, 1998 assault, how do you find as to each defendant, for plaintiff or for the defendant?", the jury found for all the defendants. Verdict Sheet, dated May 3, 2004, at 1. In response to the same question "in connection with the December 31, 1998 fire," the jury also found for all the defendants. *Id.* at 1–2. In response to the question, "With respect to plaintiff's claim that each of the defendants conspired to violate his constitutional rights, how do you find, for plaintiff or the defendant?" however, the jury found for the plaintiff against Goord and Connolly. *Id.* at 3.

Goord and Connolly contend that "because Britt's conspiracy claim [under section 1985(3)] is premised upon the same alleged constitutional injuries as his [section] 1983 claim," by answering in the negative when asked whether the defendants violated Britt's constitutional rights in connection with the October 1998 assault (question one) or the December 1998 fire (question two), "the jury found no ... injuries" in this case. Appellants' Br. at 17. They argue that the section 1985(3) verdict therefore cannot stand as a matter of law because a finding of liability under section 1985(3) requires not only that a conspiracy exist but also that the conspiracy result in a constitutional deprivation or an injury, *see* 42 U.S.C. § 1985(3),[4] and the

---

4. 42 U.S.C. § 1985(3) provides:

    If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ..., the

party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

We have explained that:

jury here, they assert, found no such deprivation or injury. Goord and Connolly contend that they are therefore "entitled to qualified immunity because the threshold question of the qualified immunity analysis"—whether the conduct of which the plaintiff complains violates federal law, *see Sadallah v. City of Utica,* 383 F.3d 34, 37–38 (2d Cir.2004)—"was conclusively determined in their favor." Appellants' Br. at 15.

Before reaching the merits of the appellants' argument, although Britt has not "raised the issue, we are obliged ... to assess whether we have jurisdiction to hear this appeal." *Goldberg v. Cablevision Sys. Corp.,* 261 F.3d 318, 323 (2d Cir.2001).

### D. Appellate Jurisdiction

■ *1. In General.* Because the district court has not yet entered a final judgment, this appeal is interlocutory.

> Ordinarily, only final judgments may be appealed under 28 U.S.C. § 1291. But under the collateral order doctrine, interlocutory appeals may be taken from determinations of "claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*Rohman v. N.Y. City Transit Auth.,* 215 F.3d 208, 214 (2d Cir.2000) (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *see also Sira v. Morton,* 380 F.3d 57, 66 (2d Cir.2004) (citing, *inter alia, Mitchell).*

■ "Not every collateral order denying a qualified-immunity claim is immediately appealable, however." *Rohman,* 215 F.3d at 214. In *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), the Supreme Court decided that a federal court of appeals lacks jurisdiction to decide an interlocutory appeal from a district court's denial of a claim of qualified immunity to the extent that the denial involves "only a question of 'evidence sufficiency.'" *Id.* at 313, 115 S.Ct. 2151. The Court noted that its determination in *Mitchell* that a denial of qualified immunity could be considered an appealable final judgment "rested upon the view that 'a claim of immunity is conceptually distinct from the merits of the plaintiff's claim.'" *Id.* at 314, 115 S.Ct. 2151 (quoting *Mitchell,* 472 U.S. at 527, 105 S.Ct. 2806). For this reason, the *Johnson* Court explained, the *Mitchell* decision "referred specifically to a district

To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Gray v. Town of Darien,* 927 F.2d 69, 73 (2d Cir.) (citing *United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)), *cert. denied,* 502 U.S. 856 (1991). A section 1985(3) "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999) (internal quotation marks and citation omitted).

court's 'denial of a claim of qualified immunity, *to the extent that it turns on an issue of law.'* *Id.* at 313, 115 S.Ct. 2151 (quoting *Mitchell*, 472 U.S. at 530, 105 S.Ct. 2806) (emphasis added in *Johnson); see also Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (noting that "determinations of evidentiary sufficiency . . . are not immediately appealable merely because they happen to arise in a qualified-immunity case"); *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir.1996) ("What we may not do . . . is entertain an interlocutory appeal in which a defendant contends that the district court committed an error of law in ruling that the plaintiff's evidence was sufficient to create a jury issue. . . ."). In short, "[t]o be appealable immediately, the qualified-immunity denial must present 'a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case,'" *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210–11 (2d Cir.2002) (quoting *Johnson*, 515 U.S. at 313, 115 S.Ct. 2151), and must not pose the sufficiency question over which *Johnson* made clear we have no interlocutory appellate jurisdiction.

*2. Appellate Jurisdiction in This Case.* In deciding whether we have appellate jurisdiction, we note at the outset this appeal's rather unusual procedural posture.

Typically, an interlocutory appeal from a district court's denial of a claim of qualified immunity is brought after the district court denies the claim at the pleading stage, *see, e.g., Pena v. DePrisco*, 432 F.3d 98, 107 (2d Cir.2005), or upon denial of the defendant's motion for summary judgment, based on the plaintiff's, or an agreed upon, version of the facts, *see, e.g., Bizzarro v. Miranda*, 394 F.3d 82, 85–86 (2d Cir.2005). Here, instead, the appellants appeal from a post-verdict denial of their claim of qualified immunity. As the First Circuit observed in a similar context, "[t]his atypical history means that we are in the somewhat unusual position of considering the qualified immunity question . . . when the case has already been tried." *Wilson v. City of Boston*, 421 F.3d 45, 53 (1st Cir.2005). "To be sure, this unusual posture does not affect the viability of the qualified immunity defense." *Id.* But the appellants do not make the arguments that are ordinarily the basis for a claim of qualified immunity, namely that the conduct attributed to them is not prohibited by federal law, that the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the conduct, or that the appellants' actions were objectively legally reasonable in light of the legal rules that were clearly established at the time they were taken. *See Sadallah*, 383 F.3d at 37.[5] Instead, they argue that the jury's answers to the first two questions posed on the special verdict sheet render a finding of liability under section 1985(3) impermissible. This case is in that regard apparently unique.[6]

Nonetheless, insofar as the appellants' argument raises " 'a legal issue that can be

---

5. The appellants argued before trial that they were entitled to qualified immunity on the ground that Britt had not properly alleged a violation of the Constitution. See Mem. of Law In Support of Defendants' Motions to Dismiss the Second Amended Complaint, dated Feb. 17, 2004, at 15–16; *see also* Answer to Amend. Compl. ¶¶ 23, 25. The district court rejected that argument. See *Britt v.*

*Dep't of Corr.*, 2004 WL 547955, at *4, 2004 U.S. Dist. LEXIS 4441, at *11–*12 (S.D.N.Y. Mar. 19, 2004). The appellants did not appeal from that decision.

6. We have not been pointed to, nor are we otherwise aware of, any case in which appellants have made such an argument in an interlocutory appeal from a post-trial denial of qualified immunity.

decided with reference only to undisputed facts and in isolation from the remaining issues of the case,'" *Munafo,* 285 F.3d at 210 (quoting *Johnson,* 515 U.S. at 313, 115 S.Ct. 2151), and does not raise the sufficiency question over which *Johnson* ruled we have no interlocutory jurisdiction, we conclude that an interlocutory appeal here is appropriate and that we have appellate jurisdiction. The retrial of the case against the appellants as to punitive damages is pending. In *Johnson,* · the Supreme Court observed that one of the principal reasons for permitting an interlocutory appeal of a denial of qualified immunity in the summary judgment setting is to vindicate the defendant's right, if he or she is entitled to such immunity, not to be subjected to a trial. "[T]he *Mitchell* Court held that [without immediate review, a] summary judgment order [denying qualified immunity to a defendant] was, in a sense, 'effectively unreviewable,' for review after trial would come too late to vindicate one important purpose of 'qualified immunity'—namely, protecting public officials, not simply from liability, but also from standing trial." *Johnson,* 515 U.S. at 311–12, 115 S.Ct. 2151 (quoting *Mitchell,* 472 U.S. at 525–27, 105 S.Ct. 2806). In the case before us, although it is too late to protect the appellants from standing trial, it is not too late to vindicate their right, if they are entitled to immunity, not to undergo a second one on the issue of damages.

*E. Merits*

■ We conclude, however, that the appellants' qualified immunity argument fails on the merits because the appellants read the jury's verdict sheet without referring to the jury charge. "It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge." *United States v. Pforzheimer,* 826 F.2d 200, 205 (2d Cir.1987); *see also LNC Invs., Inc. v. Nat'l Westminster Bank, N.J.,* 308 F.3d 169, 177 n. 10 (2d Cir.2002) ("The district court's instructions were quite clear . . . and we must presume the jury to follow its instructions."), *cert. denied,* 538 U.S. 1033, 123 S.Ct. 2080, 155 L.Ed.2d 1063 (2003).

In its instructions to the jury regarding Britt's section 1985(3) claim, the district court explained that it must be "prove[n] that as a result of the conspiracy, the plaintiff was either injured in his person or property or deprived of [a] right of a citizen of the United States." *See* Trial Tr., Apr. 30, 2004, at 768.[7] The district court also stated that the third question on the verdict sheet pertained to this claim. *See id.* at 776.

We therefore presume that in finding the appellants liable to Britt under section 1985(3), the jury found that the evidence presented at trial demonstrated not only the existence of a conspiracy, but also that "as a result of the conspiracy, the plaintiff was either injured . . . or deprived of any right of a citizen of the United States." *Id.* at 768. Thus, the appellants' argument that the jury's answers to the first three questions on the verdict sheet establish that the jury concluded that there was only a conspiracy—and no more—is incor-

---

**7.** We note that it appears that the district court mistakenly said "defendant" when it meant "plaintiff" in explaining who must prove that the plaintiff was injured or deprived of a constitutional right. *See* Trial Tr., Apr. 30, 2004, at 768. It is abundantly clear from the district court's section 1985(3) jury charge as a whole, however, that the court correctly explained to the jury that the burden of proof was on the plaintiff. *See id.* at 767–68; *see also id.* at 755. In any event, the appellants did not contest the accuracy of the jury charge before the district court, *id.* at 782, nor do they do so here.

rect.[8] We therefore reject the appellants' argument that they enjoy qualified immunity as a matter of law.

## II.  Pendent Appellate Jurisdiction

The appellants contend that we should exercise pendent appellate jurisdiction to review the district court's decision that the evidence at trial was sufficient to find liability under section 1985(3).[9] Although Britt again does not raise the issue, before reaching the merits of the appellants' argument, we must decide whether we may indeed exercise pendent appellate jurisdiction. *See Goldberg,* 261 F.3d at 323.

### A.  In General

■ "Pendent appellate jurisdiction allows an appeals court to exercise jurisdiction over a non-final [and therefore otherwise unappealable] claim where the issue is inextricably intertwined with an issue over which the court properly has appellate jurisdiction," *Stolt–Nielsen SA v. Celanese AG,* 430 F.3d 567, 576 (2d Cir.2005) (internal quotation marks and citation omitted; alterations incorporated), or where "review of the otherwise unappealable issue is necessary to ensure meaningful review of the appealable one," *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004) (internal quotation marks and citation omitted).

In the federal system, there is a general presumption against immediate appellate review of nonfinal orders, and the Supreme Court has cautioned against the adoption of a "flexible" or "loose" approach in connection with the exercise of pendent appellate jurisdiction. *See Swint v. Chambers County Commission,* 514 U.S. 35, 45–50, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). Accordingly, we have exercised such jurisdiction only in exceptional circumstances.

*Munafo,* 285 F.3d at 215.

### B.  Pendent Appellate Jurisdiction in This Case.

■ In arguing that the evidence presented at trial was insufficient, the appellants contend that "there was a complete absence of evidence in the record to support a claim of conspiracy." Appellants' Br. at 25. They also assert that there was no evidence presented at trial of "an agreement that was motivated by a discriminatory animus." *Id.* at 26. In order for us to evaluate these arguments, we would be required to review the entire trial record, asking whether there existed a "legally sufficient evidentiary basis for a reasonable jury to find" that these elements of section 1985(3) were met. Fed. R.Civ.P. 50(a). Such an inquiry would be different from, and significantly broader than, that needed to determine whether, as the appellants assert in their first argument, they are entitled to qualified immu-

---

8. We are not aware of any authority for the proposition that we would have appellate jurisdiction to entertain an argument that the jury's findings are inconsistent based on the present record and on an interlocutory basis had it been made before us. *Cf. Ortiz–Del Valle v. Nat'l Basketball Ass'n,* 190 F.3d 598, 599–600 (2d Cir.1999) (per curiam) (dismissing an appeal for lack of appellate jurisdiction in similar circumstances). But it has not been made before us. By noting our lack of jurisdiction over the issue, incidentally, we do not mean to imply that we have a view one way or the other with respect to the question.

9. The appellants do not argue that we have appellate jurisdiction under the collateral order doctrine over their appeal from this portion of the district court's order. *Cf. Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994) (pre-*Johnson v. Jones* decision), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *O'Neill v. Town of Babylon,* 986 F.2d 646, 649 (2d Cir.1993) (pre-*Johnson v. Jones* decision). We therefore do not reach this issue.

nity because the jury's findings with respect to the October and December 1998 incidents preclude entry of judgment against them under section 1985(3). The appellants' arguments with respect to evidentiary sufficiency are thus in no way "inextricably intertwined with an issue over which [we] properly ha[ve] appellate jurisdiction." *Stolt–Nielsen,* 430 F.3d at 576 (internal quotation marks and citation omitted). It is also clear, we think, that review of the district court's judgment with respect to evidentiary sufficiency is not "necessary to ensure meaningful review" of the appellants' qualified immunity argument. *Luna,* 356 F.3d at 487.

The appellants have received a jury verdict against them and are about to undergo a second trial on punitive damages. When that trial has concluded, they will be able to raise any preserved assertions of error on appeal from a final judgment. There is nothing exceptional about their circumstances in this regard. *See Munafo,* 285 F.3d at 215.[10]

We therefore decline to exercise pendent appellant jurisdiction over the appellants' challenge to the sufficiency of the evidence presented at trial.

At the risk of belaboring the obvious, we note, finally, that our conclusion that we do not, at this time, have appellate jurisdiction over this portion of the appellants' appeal, has no bearing on the merits of the appellants' contentions. We thus do not mean to suggest that there was or was not sufficient evidence presented at trial to support a finding of liability under section 1985(3), and in particular that there was or was not sufficient evidence presented to

establish that the appellants did or did not act with the requisite "racial or perhaps otherwise class-based, invidious discriminatory animus." *Thomas,* 165 F.3d at 146 (internal quotation marks and citation omitted). For this Court, at least, those are issues for another day.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court to the extent that it rejected the appellants' argument that they were entitled to qualified immunity on the basis of the jury's findings. Insofar as the appellants contend that the district court erred in concluding that the evidence presented at trial was sufficient to support liability under section 1985(3), we dismiss the appeal for lack of appellate jurisdiction.

---

10. In an analogous context, we noted that "[a] system in which parties could get immediate appellate review of multiple issues once the door was opened for review of one issue would tempt such parties to rummage for rulings that would authorize interlocutory appeals," and we expressed concern that a "par-
ty will appeal a flimsy collateral issue with the intention of obtaining interlocutory review for other issues it presses." *Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748, 757 (2d Cir.1998), *cert. denied,* 527 U.S. 1003, 119 S.Ct. 2337, 144 L.Ed.2d 235 (1999).