**11-3843-cv (L)**
**SEC v. Lynn A. Smith, et al.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: March 13, 2012          Decided: March 18, 2013)

Docket Nos. 11-3843-cv(L), 11-3845-cv(con), 11-3848-cv (con),

11-3851-cv(con), 11-4238-cv(con)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

v.

LYNN A. SMITH, LAUREN T. SMITH, GEOFFREY R. SMITH, TRUSTEE OF
THE DAVID L. AND LYNN A. SMITH IRREVOCABLE TRUST U/A 8/04/04,

Defendants-Appellants,

JILL A. DUNN, DAVID M. WOJESKI,

Non-Party Appellants,

MCGINN, SMITH & COMPANY, INCORPORATED, MCGINN, SMITH ADVISORS,
LLC, MCGINN SMITH CAPITAL HOLDINGS CORPORATION, FIRST ADVISORY
INCOME NOTES, LLC, FIRST EXCELSIOR INCOME NOTES, LLC, FIRST
INDEPENDENT INCOME NOTES, LLC, THIRD ALBANY INCOME NOTES, LLC,
TIMOTHY M. MCGINN, DAVID L. SMITH, NANCY MCGINN,

Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:    WINTER, LIVINGSTON, Circuit Judges, and RAKOFF,
                District Judge.**
_____

*The clerk of court is instructed to conform the caption in
accordance herewith.

**The Honorable Jed S. Rakoff of the United States District Court for
the Southern District of New York, sitting by designation.

1

Appeal from an order of the United States District Court for the Northern District of New York (David Homer, <u>Magistrate Judge</u>) imposing sanctions against several individual appellants and authorizing a receiver to dispose of property owned by an irrevocable trust.  We dismiss in part, affirm in part, and remand with regard to the disposition of the trust's real property.

JAMES D. FEATHERSTONHAUGH, Featherstonhaugh, Wiley & Clyne, LLP, Albany, New York, <u>for</u> <u>Defendant-Appellant</u> Lynn A. Smith.

STEPHEN B. HANSE, Featherstonhaugh, Wiley & Clyne, LLP, Albany, New York, <u>for</u> <u>Defendants-Appellants</u> Geoffrey R. Smith, Trustee of the David L. and Lynn A. Smith Irrevocable Trust U/A 8/04/04, Lauren T. Smith and Geoffrey R. Smith.

BENJAMIN ZELERMYER, Steinberg & Cavaliere, LLP, White Plains, New York, <u>for</u> <u>Non-Party Appellant</u> Jill A. Dunn, Esq.

FRED N. KNOPF, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, White Plains, New York, <u>for</u> <u>Non-Party Appellant</u> David M. Wojeski.

KEVIN P. MCGRATH, Senior Trial Counsel, Securities and Exchange Commission, New York, New York, (Mark D. Cahn, General Counsel, Michael A. Conley, Deputy General Counsel, Jacob H. Stillman, Solicitor, Christopher Paik, Securities and Exchange Commission, Washington, D.C. <u>on the brief</u>), <u>for Plaintiff-Appellee</u>.

WINTER, Circuit Judge:

This appeal arises out of a proceeding brought to remedy securities fraud and recover assets -- to be distributed to victims -- that were the fruits of the fraud. The issues before us relate to enforcement of, and compliance with, an order freezing various assets.

Appellants, the David L. and Lynn A. Smith Irrevocable Trust U/A 8/04/04 (the "Trust") and various individuals, appeal from Magistrate Judge Homer's[1] order directing the disposition of the Trust's assets and sanctioning: (i) Lynn Smith, a defendant in the action, and (ii) non-parties Jill Dunn, attorney for the Trust, and David M. Wojeski, one-time trustee of the Trust. The order against Lynn Smith provided that, in the event of her failure to satisfy the sanctions against her, a receiver would dispose of a piece of real property owned by the Trust if doing so would maximize the return on that property.

This appeal raises questions concerning our jurisdiction to hear interlocutory appeals of sanctions orders; the propriety of the sanctions imposed; and whether it was error for the magistrate judge to give the receiver authority to dispose of Trust assets without first providing notice and an opportunity for the Trust to be heard.

---

[1] The parties consented to have the issue of the asset freeze decided by a magistrate as provided by 28 U.S.C. § 636(c).

We dismiss the appeals of Jill Dunn and David Wojeski for lack of jurisdiction, affirm the sanction order as to Lynn Smith, and remand to allow the Trust to contest the court's order regarding the disposition of Trust property and for the magistrate judge to give additional guidance to the receiver as to disposition of the Trust property.

BACKGROUND

The origins and provisions of the Trust, which was created in August 2004, are central to the issues on appeal. David and Lynn Smith created the Trust with themselves as donors and their adult children as beneficiaries. The Trust was funded by 100,000 shares of stock held in Lynn Smith's name. The shares were worth approximately $4.5 million. The shares were not given outright to the Trust but were transferred pursuant to an annuity agreement that would pay the Smiths approximately $490,000 per year beginning in 2015 and ending either when both David and Lynn Smith died or when the Trust's assets were exhausted. As discussed infra, contrary to the district court's orders, the existence of this annuity was not revealed until late July 2010, and its discovery gave rise to the sanctions imposed.

In April 2010, the SEC filed the present complaint against David Smith and various related individuals and corporations alleging violations of the securities laws. Lynn Smith, his

4

wife, was included in the action as a relief defendant[2] and later as a defendant under New York law who had received a fraudulent conveyance. The SEC also moved to freeze the assets of all of the defendants. In response, the district court issued an order that, <u>inter alia</u>, froze Lynn Smith's assets and directed her to provide "an accounting [of her] own personal assets, liabilities and general financial condition."

Lynn Smith's April 29 statement of accounts and list of assets included no mention of any interest in the Trust or in the annuity that was to be paid to her and David Smith by the Trust. On May 26, she filed an affidavit stating explicitly that she and David Smith "had no interest in or expectation of an interest in the [Trust]. It exists solely, exclusively and permanently for the benefit of our children." Finally, at a hearing concerning the asset freeze on June 10, Lynn Smith stated that she had no ownership interest in the stock that was transferred to the trust and that the funds in the Trust were solely for the benefit of her children.

On July 7, 2010, after considering the blatantly misleading information before it, the court released the freeze on the Trust's assets, concluding that David Smith had no

---

[2] A relief defendant is an individual who "holds the subject matter of the litigation in a . . . possessory capacity." <u>Commodities Futures Trading Comm'n v. Walsh</u>, 618 F.3d 218, 225 (2d Cir. 2010) (<u>quoting</u> <u>SEC v. Colello</u>, 139 F.3d 674, 676 (9th Cir. 1998)). In the context of securities enforcement actions, relief defendants are individuals who are not accused of having violated the securities laws themselves, but who are believed to be in possession of profits from such violations. They are named as parties to aid the recovery of funds to be paid to victims. <u>See</u> <u>id.</u>

5

beneficial ownership in the trust.  Shortly after the lifting of the freeze, the Trust made several expenditures.  Jill Dunn, the Trust's attorney, received $101,096 for lawyer's fees and costs; David Wojeski, then the sole trustee, received $8,098.50 in fees for his work as trustee; and the Trust purchased a vacation home in New York from Lynn Smith for $600,000.

On July 20, Wojeski received a fax containing an e-mail from an individual at Southtowns Financial Group that stated, "[t]he first four pages [attached] are from the annuity contract.  The three pages after that are documents that were in the file that I thought might be relevant."  The pages that followed included a "Policy Delivery Receipt" for a "PRIVATE ANNUITY CONTRACT," which was signed by David Smith; the first page of a private annuity agreement, which identified David and Lynn Smith as annuitants; and a page providing the key terms of the contract.  The next day, July 21, Wojeski forwarded the fax to Dunn via e-mail.

On July 22, during a teleconference with the court to discuss the SEC's intended motion to re-freeze the Trust's assets, the SEC attorneys informed the court that they were going to offer evidence that the Smiths owed a significant amount in gift taxes for transferring the stock to the Trust and that the Trust also owed a capital gains tax.  Dunn argued that no gift tax was owed, but provided no supporting details for that assertion.  The SEC attorneys, David Stoelting and

6

Kevin McGrath, then called Dunn to inquire as to why she believed that the Smiths did not owe gift taxes from the transfer to the Trust. Stoelting testified that Dunn told them that no tax was owed because of "a private annuity agreement." Dunn, on the other hand, asserted that she told the attorneys that the Trust was a "private annu-ity trust."[3] After the call, the SEC attorneys contacted the original trustee for more information, who sent a copy of the full annuity agreement to the SEC and Dunn on July 27.

After receiving the agreement, the SEC sought reconsideration of the prior order lifting the freeze on the Trust's assets in view of the Smiths' interest in the Trust. The Trust challenged the motion, arguing that reconsideration was inappropriate because the SEC could have discovered the annuity before the original proceeding to freeze the Trust's assets. In support, the Trust submitted affidavits from both Dunn and Wojeski. Dunn's affidavit asserted that she did not disclose the agreement to the SEC on the telephone call of July 22. It stated that Dunn "could state with absolute certainty that [she] did not make [the statement that there was a private annuity agreement] because [she] did not know of the existence of the private annuity agreement until [she] received it . . . on July 27, 2010, the same day the SEC received it." It

---

[3] The other SEC attorney did not remember hearing Dunn say anything about an annuity agreement. However, the SEC attorney also testified that he was not paying attention during that part of the conversation.

further stated that "[n]either I nor Mr. Wojeski had any documents in our possession relating to the private annuity other than the courtesy copy of the documents I received . . . on July 27 . . . ." Wojeski's affidavit stated that he first learned of the existence of the annuity agreement in late July when Dunn informed him that both she and the SEC had received the agreement from the former trustee.

A hearing concerning the motion for reconsideration was scheduled for November 16, 2010. The day before that hearing, Dunn submitted a corrective affidavit stating that she had recently discovered the July 21 e-mail from Wojeski containing the documents referencing the annuity and that her prior affidavit was incorrect. She stated that she did not recall the documents when she composed her prior affidavit because, at the time she received the e-mail, she was focusing her attention on the Trust's purchase of the New York vacation home, other client matters, and personal issues. A day after the hearing, Wojeski also submitted a corrective affidavit stating that when he reviewed his first affidavit -- prepared by Dunn -- he did not realize that the documents he had received on July 20 were different from the contract produced on July 27 and that he thought the two events had happened at the same time. He also implied that the affidavit was not incorrect, only imprecise, because he did learn of the annuity in late July.

8

The court granted the SEC's motion and reinstated the freeze on the Trust's assets. The court found the SEC's evidence to be more credible. It specifically found that Dunn had mentioned the annuity agreement during the telephone call on July 22. Magistrate Judge Homer noted, inter alia, the logical consistency and probability of a reference by Dunn to the private annuity agreement being elicited by questions from the SEC concerning the reason Dunn believed no gift tax was owed by Smith. The court also granted the SEC leave to move for sanctions, which the Commission did.

After considering all parties' arguments, the court sanctioned Lynn Smith for her failure to disclose the annuity in her list of accounts and assets and for her statements that she had no present or future interest in the Trust. The court found Lynn Smith's argument that she had forgotten about the annuity unconvincing in light of the considerable size of the payments that she would receive from the annuity. The court also found that Lynn's efforts to preserve the assets of the Trust were inconsistent with her alleged forgetfulness, noting that no payments had been disbursed from the Trust to the named trust beneficiaries, the Smith children, prior to 2010 and also that Lynn had personally covered a year's worth of her daughter's expenses even though they were of a type for which the Trust was created. The court then sanctioned Lynn Smith under both Rule 11(c)(3) and the inherent powers of the court.

She was ordered to repay the Trust $944,848, which included the $600,000 that the Trust paid to purchase the New York vacation home, and to pay the SEC $51,232 in attorney and expert fees.

The court also sanctioned Wojeski and Dunn for their statements that they first learned of the annuity agreement on July 27, rather than on July 20 and 21 respectively. The magistrate judge found that it was not credible that Dunn ignored a client's e-mail for six days. Moreover, he found that Dunn's explanation that she did not remember reading the e-mail to be incredible because the documents were of such importance that Dunn must have immediately known their significance. Finally, the court elaborated on its prior finding that Dunn had told the SEC attorneys about the annuity on July 22 by finding that the false statements were made deliberately because: (i) it was improbable that Dunn had ignored a client e-mail for at least six days, (ii) Dunn's first reference to a "private annuity trust" came the day after Wojeski sent an e-mail disclosing the trust to her, and (iii) the financial stakes for Dunn -- over $100,000 -- provided ample motivation to conceal the Trust's existence. Dunn was

sanctioned under Rule 11(c)(3),[4] 28 U.S.C. § 1927,[5] and the inherent power of the court. She was ordered to pay $5,355, the amount she had been paid by the Trust after July 21. She was also publicly admonished and reported to the New York State Bar.

With regard to Wojeski, the court noted that his affidavit had the effect of corroborating Dunn's false affidavit. The court also rejected Wojeski's contention that the original affidavit, in stating that he first learned of the agreement from Dunn in late July, was simply imprecise rather than false. In doing so, the court noted that the original affidavit stated not only that Wojeski had learned about the agreement in late July, which was not necessarily incorrect, but also that he learned that information from Dunn, which was clearly untrue. Therefore, the court found that not only had Wojeski made a false statement in his original affidavit, but that it was disingenuous for him to say that his original affidavit was an imprecise reference to him receiving the fax on July 20. Wojeski was sanctioned under both Rule 11(c)(3) and the

_____

[4] By making a representation to the court, whether by pleading, written motion, or other paper, one certifies that the "the factual contentions have evidentiary support." Fed. R. Civ. P. Rule 11(b). Rule 11(c)(3) provides, "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in [an] order has not violated Rule 11(b)." If a court determines that a Rule 11(b) violation has occurred, it may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Rule 11(c)(1).

[5] Section 1927 provides, "Any attorney . . . of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

11

inherent power of the court.  He was ordered to repay $13,384, the amount he had received from the Trust in payment and reimbursements after July 20; was publicly admonished; and was reported to the state licensing authority for accountants.

Finally, the court authorized the receiver, who had previously been appointed to oversee the corporations owned by David Smith and his co-defendants, to proceed in whatever manner he deemed best to maximize the return on the vacation property that the Trust had purchased from Lynn Smith if she did not repay the $600,000 by September 1, 2011.  The order stated:

> [I]f Lynn Smith fails to return to the Receiver by September 1, 2011 the full amount of the $600,000.00 sale price of the property plus closing costs, the Receiver may proceed in whatever manner he deems economically most feasible to maximize the return on this property.  This may include the sale or rental of the property, or portions thereof, depending on the receiver's determination of market conditions.  Lynn Smith and the Trust shall cooperate reasonably with the Receiver and any designee to facilitate the sale or rental of the property.

This appeal followed.

DISCUSSION

a)  Appellate Jurisdiction

Our appellate jurisdiction is generally limited to final decisions of district courts, those that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment."  See Cunningham v. Hamilton Cnty., Ohio,

12

527 U.S. 198, 204 (1999) (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 521-22 (1988)).  This limitation accords deference to trial judges, prevents piecemeal litigation, and conserves the resources of both the opposing party and the judiciary by preventing numerous successive appeals.  See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981).

An exception to this general rule is the collateral order doctrine, see Cunningham, 527 U.S. at 204, under which federal appellate courts have jurisdiction over "decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action."  Id. (quoting Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 42 (1995)).  However, the collateral order doctrine is not one requiring a fact-specific, case-by-case analysis.  Rather, it is applied categorically.  Therefore, even if a particular appeal satisfies the three conditions, we still lack jurisdiction if the appeal is of a type that does not generally fall within the doctrine.  See Cunningham, 527 U.S. at 206 ("Perhaps not every discovery sanction will be inextricably intertwined with the merits, but we have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral.").

13

A statutory exception to the final order requirement is found in 28 U.S.C. § 1292, which provides appellate jurisdiction over appeals of preliminary injunctions. Jurisdiction under this provision extends to issues that are "inextricably bound up with" those injunctions. Lamar Adver. of Penn, LLC v. Town of Orchard Park, 356 F.3d 365, 371 (2d Cir. 2004) (citing 28 U.S.C. § 1292(a)(1)). Review of such issues is "a narrowly tailored exception to the final judgment rule," Amador v. Andrews, 655 F.3d 89, 95 (2d Cir. 2011), and issues will be deemed inextricably intertwined with appellate review of preliminary injunctions only where "review of 'the otherwise unappealable issue is necessary to ensure meaningful review of the appealable one.'" Id. (quoting Britt v. Garcia, 457 F.3d 264, 273 (2d Cir. 2006)).

Applying these principles to the present matter, we agree with the SEC that we lack jurisdiction over the appeals of Dunn and Wojeski. However, we have jurisdiction over the appeal of Lynn Smith.

1. Appeals of Dunn and Wojeski

Dunn and Wojeski argue that we have jurisdiction over their appeals under the collateral order doctrine.

In Cunningham, the Supreme Court, addressing an appeal of sanctions imposed under Fed. R. Civ. P. 37(a),[6] held that "a

---

[6] Rule 37 provides for sanctions, including costs and reasonable attorney's fees, against parties or persons unjustifiably resisting discovery. See Rule 37 advisory committee's note on 1970 amendments.

sanctions order imposed on an attorney is not a 'final decision' under § 1291," and is therefore not immediately appealable. 527 U.S. at 202-03, 210. In reaching this conclusion, the Court relied heavily on the fact that review of sanctions orders could not remain entirely separate from the merits of the underlying litigation because the propriety of those orders may require courts to inquire into the importance of information sought, the adequacy of responses, and the truthfulness of those responses. See id. at 205-06. Therefore, review of the sanctions "would differ only marginally from an inquiry into the merits." Id. at 206.

The Court also pointed out that an attorney's appeal from a sanction order fails to satisfy the third prong of the collateral order doctrine because those orders are not unreviewable on appeal of a final judgment. See id. at 206-09. Despite the fact that attorneys are not parties to the underlying case, the "effective congruence of interests between clients and attorneys counsels against treating attorneys like other nonparties for purposes of appeal." Id. at 207. Moreover, unlike civil contempt orders for defiance of a district court's enforcement order, which are considered final and therefore appealable, Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 92 (2d Cir. 2006), sanctions orders do not seek to compel compliance with existing court orders, but are available as a deterrent to delaying tactics and the

15

imposition of unnecessary costs on adversaries. Willy v. Coastal Corp., 503 U.S. 131, 138-39 (1992). Allowing immediate appeal of those orders would be counterproductive because it would allow the sanctioned party to cause additional delays and costs. Cunningham, 527 U.S. at 207-09.

As noted, Cunningham addressed appellate jurisdiction only with regard to Rule 37 sanctions. Therefore, our appellate jurisdiction turns on whether the holding in Cunningham also applies to sanctions imposed under Rule 11, 28 U.S.C. § 1927, and the inherent power of the court.

Several other circuits have held that Cunningham precludes interlocutory appeals of sanctions imposed under these other sources of authority. See Douglas v. Merck & Co., 456 F. App'x 45 at *47 n.1 (2d Cir. Jan. 23, 2012)[7] (Slip Op.) (citing Stanley v. Woodford, 449 F.3d 1060, 1063-65 (9th Cir. 2006) (§ 1927 and inherent power sanctions); Comuso v. National R.R. Passenger Corp., 267 F.3d 331, 339 (3d Cir. 2001) (abrogating precedent or appealability of Rule 11 and discovery sanctions and holding inherent power sanctions not immediately appealable); Empresas Omajede, Inc. v. Bennazar-Zequeira, 213

---

[7] However, the panel in Douglas, which was faced with an interlocutory appeal of sanctions imposed under the district court's inherent power, chose not to consider whether Cunningham categorically precluded interlocutory appeals of inherent-power sanctions because the specific facts of that case did not satisfy the collateral order test. See Douglas, 456 F. App'x 45 at *47.

F.3d 6, 9 n.4 (1st Cir. 2000) (inherent power sanctions)).[8]  In addition, we have also suggested that in the wake of <u>Cunningham</u> "a sanctions order against an attorney does not satisfy the requirements of the collateral order doctrine."  <u>New Pac. Overseas Grp. (U.S.A.) v. Excal Int'l Dev. Corp.</u>, 252 F.3d 667, 670 (2d Cir. 2001).  However, like <u>Cunningham</u>, that case directly addressed sanctions imposed only under Rule 37.[9]  <u>See</u> <u>id.</u>

We conclude that <u>Cunningham</u> applies to appeals of sanctions imposed under Rule 11 as well as under the district court's inherent powers because, like Rule 37 sanctions, these appeals will often implicate the merits of the underlying action.  Sanctions based on these other authorities often require courts to evaluate the completeness or truthfulness of responses and whether a party's claims are without merit.  <u>See</u>

---

[8] The reasoning for concluding that <u>Cunningham</u> precludes immediate appeals of sanction orders has differed slightly among the circuits.  For example, the Third Circuit has asserted that the Supreme Court created "a <u>per se</u> rule that sanctions orders are inextricably intertwined with the merits of the case."  <u>Comuso</u>, 267 F.3d at 339.  On the other hand, the Ninth Circuit has looked to the rationale used by the Court in <u>Cunningham</u> and concluded that the "reasons underlying <u>Cunningham</u>'s bar against immediate appeal from Rule 37(a) sanctions orders apply equally" to other types of sanctions.  <u>Stanley</u>, 449 F.3d at 1064 (quoting <u>Cato v. Fresno City</u>, 220 F.3d 1073, 1074 (9th Cir. 2000)).  The latter reasoning leaves open the possibility that some types of sanctions may be immediately appealable if the rationale underlying the <u>Cunningham</u> decision does not apply.  We need not address these issues because, as discussed <u>infra</u>, the reasoning applied in <u>Cunningham</u> applies to the types of sanctions present in this matter.

[9] We note that, in a recent opinion, two members of a panel stated in separate concurring opinions that we have jurisdiction over the immediate appeal of Rule 11 sanctions.  <u>See</u> <u>Kiobel v. Millson</u>, 592 F.3d 78, 87 (2d Cir. 2010) (Cabranes, <u>J.</u>, concurring); <u>id.</u> at 107 (Jacobs, <u>C.J.</u>, concurring).  However, neither opinion discussed <u>Cunningham</u>, both relying entirely on precedent preceding that decision.  <u>See</u> <u>id.</u> at 87, 107.

*e.g.*, *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) (Rule 11); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78-79 (2d Cir. 2000) (inherent powers and § 1927).

The fact that the particular sanctions before us were imposed in the context of an ancillary proceeding, and required evaluation of the accuracy and truthfulness of appellants, does not alter the analysis. Although the particular issue giving rise to the sanctions here -- Lynn Smith's monetary interest in the Trust -- does not necessarily implicate the merits of the underlying securities fraud prosecution, ancillary proceedings often do implicate the underlying claims. *See, e.g.*, *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 225 (2d Cir. 2010) (to freeze the assets of a relief defendant the government must show that they are likely to succeed in disgorging the funds, which requires, in part, that the assets are ill-gotten, which deals directly with the merits of the underlying action). Therefore, sanctions in these contexts also "often will be inextricably intertwined with the merits of the action," *Cunningham*, 527 U.S. at 205, and, even if that is not necessarily the case here, the requisite categorical analysis is not altered.

Finally, the particular sanctions here do not meet the third prong of the collateral order doctrine. As was the case in *Cunningham*, the fact that Dunn and Wojeski are not parties to this action, and are no longer acting as the attorney and

18

trustee for the Trust does not render the issues unreviewable on appeal. The Supreme Court squarely rejected a similar concern with regard to the appeals of attorneys, see id. at 206-07, and its reasoning is equally applicable to Wojeski as a trustee. Trustees, like attorneys, act on behalf of a party and have a fiduciary duty to that party. See Black's Law Dictionary "trustee" (9th ed. 2009); Saltzman v. Comm'r, 131 F.3d 87, 90 (2d Cir. 1997) ("[P]ursuant to the inexorable dictates of trust law, [the trustees] owed the trust beneficiaries the absolute duty of undiluted loyalty."). Therefore, the appeals of Dunn and Wojeski also fail to satisfy the final prong of the collateral order doctrine. We, therefore, dismiss these appeals.[10]

2. Appeal of Lynn Smith

We conclude that we have jurisdiction over Lynn Smith's appeal under 28 U.S.C. § 1292(a)(1) because the sanctions order against her is inextricably intertwined with the order of injunction against the Trust.

An appeal is inextricably bound up with an injunction if the court cannot resolve the issue of the injunction without considering the additional appeal. See Lamar Adver., 356 F.3d at 372. Here, the order directing the receiver to sell or

---

[10] Like the Court in Cunningham, we recognize that our conclusion may create hardships for Dunn and Wojeski. However, that fact does not serve to grant jurisdiction. See Cunningham, 527 U.S. at 209-10 ("Should these hardships be deemed to outweigh the desirability of restricting appeals to 'final decisions,' solutions other than an expansive interpretation of § 1291's 'final decision' requirement remain available.").

rent the property owned by the Trust was contingent on whether Lynn Smith satisfied the order of sanctions against her by the specified date. Therefore, if the order of disgorgement against Lynn Smith is invalid, the court's order regarding the disposal of the Trust's property is moot. Lynn Smith's appeal is, therefore, inextricably bound up with the Trust's appeal of the injunction,[11] and we have jurisdiction over her appeal.

b)   <u>Sanctions Against Lynn Smith</u>

We review a lower court's imposition of sanctions for abuse of discretion. <u>See</u> <u>Storey v. Cello Holdings, LLC</u>, 347 F.3d 370, 387 (2d Cir. 2003). A court abuses its discretion when it bases "its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." <u>Id.</u> at 387–88 (internal citations and quotations omitted). "An assessment of the evidence is clearly erroneous where the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" <u>Wolters Kluwer Fin. Servs., Inc. v. Scivantage</u>, 564 F.3d 110, 113 (2d Cir. 2009) (quoting <u>Zervos v. Verizon N.Y., Inc.</u>, 252 F.3d 163, 168 (2d Cir. 2001)), and the imposition of sanctions was "made with[out] restraint and discretion." <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 194 F.3d 323, 334 (2d Cir. 1999).

---

[11] Wojeski also asserts that his appeal is inextricably bound up with the injunction against the Trust; however, he does not explain how the order of sanctions against him in any way affects the injunction against the Trust. His only argument is that the sanctions order was issued in the context of a preliminary injunction proceeding. However, 28 U.S.C. § 1292(a) provides jurisdiction over orders, not over proceedings, and there is nothing in Wojeski's briefs that would suggest that review of his appeal is vital to deciding the appeal of the Trust.

Under Rule 11(c)(3) and the inherent power of the court, sanctions are appropriate where an individual has made a false statement to the court and has done so in bad faith.  See In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003) (Rule 11(c)(3)); DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998) (inherent power).  Lynn Smith argues that she did not make any false statements, that there was insufficient evidence that she acted in bad faith, and that disgorgement is not an appropriate sanction.  We address those arguments in turn.

Whether Lynn Smith made false statements, and whether she did so in bad faith, are questions of fact that will not be disturbed unless clearly erroneous.  See Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009).  The findings of the magistrate judge on these issues were certainly not clearly erroneous.

Lynn Smith was ordered to list her accounts and assets.  The annuity in question is clearly an asset.  See Black's Law Dictionary, "asset" (9th ed. 2009) (defined as something that is owned and has value).  The fact that her children were listed as the sole beneficiaries of the Trust hardly means that the Trust as arranged was for the sole benefit of the children.  Viewing the Trust as a whole, it was undoubtedly created, at least in part, to benefit Lynn and David Smith because, as Lynn Smith acknowledges in her brief, it allowed them to defer

21

capital gains taxes.  Similarly, the payments to Lynn Smith under the annuity contract were contingent on the Trust retaining sufficient assets to make those payments.  These facts clearly establish that Lynn Smith had an ongoing substantial interest in the Trust whether or not it was technically an ownership interest.[12]

The court's finding that Lynn Smith acted in bad faith in not revealing her interest in the Trust is amply supported by the record.  First, the size of the annuity payments is easily sufficient to support an inference that Lynn Smith did not simply forget about the annuity, but rather purposely chose to omit it.  Second, Lynn Smith concededly supported her daughter for approximately a year, despite the fact that the stated purpose of the Trust was to provide financial assistance to the Smiths' children when needed.  This provision of means to the daughter supports a finding that Lynn Smith was seeking to preserve the Trust's assets so as to protect her future payments under the annuity agreement and was fully aware of her interest in the Trust.  Finally, the fact that Lynn Smith sold her vacation home to the Trust soon after the original asset freeze was lifted indicates a motive to falsify the required reports in order to gain access to the Trust's funds.  While these facts may not compel as a matter of law a finding that

---

[12] We have already upheld the freeze on the Trust's assets based on the finding that the Trust was for the benefit of David Smith.  See Smith v. SEC, 432 F. App'x 10, 12 (2d Cir. 2011).

22

Lynn Smith made false statements to the court in bad faith, we are not "left with the definite and firm conviction that a mistake has been committed." Wolters Kluwer, 564 F.3d at 113 (internal quotations omitted). Indeed, the record carries a circumstantial stench that only heroic credibility findings in her favor would dissipate.

Finally, with regard to Lynn Smith's claim that disgorgement is not a proper sanction, we note that "[d]istrict courts are given broad discretion in tailoring appropriate and reasonable sanctions." O'Malley v. N.Y.C. Transit Auth., 896 F.2d 704, 709 (2d Cir. 1990); Wright & Miller, Federal Practice & Procedure § 1336.3 ("[F]ederal courts retain broad discretionary power to fashion novel and unique sanctions to fit the particular case."). In the present context -- proceedings initiated to preserve assets in order to compensate victims of the alleged fraud -- it was entirely appropriate for the court to require Lynn Smith to disgorge herself of funds she obtained after that freeze was lifted in substantial reliance upon her false statements.

c) <u>Order Authorizing the Disposition of Trust Property</u>

The order authorizing the receiver to dispose of the vacation home was issued as part of the sanction order. Therefore, it is also reviewed under an abuse of discretion standard. See United States v. Seltzer, 227 F.3d 36, 39 (2d Cir. 2000).

23

The Trust argues that the lower court abused its discretion because it did not provide the Trust with notice that the court intended to give the receiver the authority to dispose of Trust assets and an opportunity to be heard prior to issuing the order. In addition, the Trust also makes various substantive arguments that were not addressed in the district court. Those arguments include the contention that this order usurps the role of the trustee and forces the Trust to bear the costs of Lynn Smith's actions even though the Trust was not accused of wrongdoing. In response, the SEC asserts that the Trust will not bear any additional costs because the receiver was instructed to dispose of the property only if doing so would maximize the return on that property. The SEC also asserts that the Trust's other arguments are unavailing in light of the fact that the veil of the Trust's separate legal existence has been pierced as to David Smith.

The Trust also raises concerns that the order gives very little direction to the receiver as to how he or she is to determine what course of action to take. This, the Trust argues, gives the receiver nearly complete discretion and precludes effective judicial review.

We believe it appropriate to allow the magistrate judge to consider the Trust's arguments in the first instance. We in no way suggest that the district court should determine that its prior order with regard to the Trust is inappropriate. We

24

leave that to its sound discretion.  However, the court should provide additional guidance to the receiver concerning how to determine whether to dispose of the property, if at all.

CONCLUSION

For the foregoing reasons, we dismiss the appeals of Dunn and Wojeski, affirm the sanctions against Lynn Smith, and remand for further proceedings in accordance with this opinion.